GUARANTY STATE BANK OF CARTHAGE
v. CONTINENTAL BANK & TRUST CO.
OF SHREVEPORT, LA., et al.

(Court of Civil Appeals of Texas. Texarkana. Feb. 5, 1914.)

1. LIMITATION OF ACTIONS (§ 21*)—CONTRACT —ACTIONS.

Defendant bank, having contracted to take over the business of the M. bank, adopted a resolution, reciting that, whereas the directors of the M. bank had agreed to sell to defendant bank the securities, realty, property, and other assets thereof, and whereas defendant bank, by resolution, had agreed to purchase the same, in consideration of the transfer, defendant bank "assumes the payment of all liabilities of the M. bank as the same shall appear on its books at the close of business April 11, 1910." Held, that an action to charge defendant with liability for certain of the stock of the M. bank which had been pledged to plaintiff, but the value of which defendant bank had wrongfully paid to the pledgor, was an action for breach of contract, and not for a conversion of the stock, and was therefore not barred by the two-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 90–99; Dec. Dig. § 21.*]

2. BANKS AND BANKING (§ 67*)—CONSOLIDATION—LIABILITIES.

Where a contract for the consolidation of certain banks bound defendant bank to pay all the liabilities of the M. bank as the same appeared on its books at the close of business April 11, 1910, such agreement bound defendant to pay the value of the M. bank's stock to the lawful holders as a part of the M. bank's liabilities.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 129; Dec. Dig. § 67.*]

3. BANKS AND BANKING (§ 67*)—CONSOLIDATION—STOCK—PAYMENT—ESTOPPEL.

Where a consolidation agreement between banks bound defendant to pay the M. bank's liabilities, which included its stock, as the same appeared on its books of a specified date, and certain of the M. bank's stock had been pledged to plaintiff, it was entitled to assume that defendant would not pay the value of the stock to the pledgor without requiring a surrender thereof, and hence plaintiff's failure to notify defendant of the pledge did not estop it to recover from defendant the value of such stock, notwithstanding the prior payment to the pledgor who was insolvent.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 129; Dec. Dig. § 67.*]

4. BANKS AND BANKING (§ 67*)—CONSOLIDATION — LIABILITIES — PAYMENT — CAPITAL STOCK—MARKET OR BOOK VALUE.

Where a consolidation agreement between banks obligated defendant bank to pay all the liabilities of the M. bank as they appeared on the M. bank's books at the close of business April 11, 1910, defendant was liable for the stock of the M. bank at its book value, and not at its market value.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 129; Dec. Dig. § 67.*]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Action by the Continental Bank & Trust Company of Shreveport and others against the Guaranty State Bank of Carthage. Judgment for plaintiffs, and defendant appeals. Affirmed.

By its suit the appellee bank, plaintiff in the court below, sought and recovered a judgment against R. E. Trabue, the other appellee, for the amount of two promissory notes in its favor, made by said Trabue, one dated August 29, 1912, payable 90 days after its date, for $2,000, interest and attorney's fees, and the other dated June 7, 1912, payable October 7, 1912, for $5,000, interest and attorney's fees. Said appellee bank alleged and proved that the note for $5,000 was a renewal of one made by Trabue in October, 1906, and that the note for $2,000 was a renewal of one made by him February 10, 1909. It further alleged and proved that, at the time, to wit, said February 10, 1909, the original $2,000 note was delivered to it by Trabue, he delivered to it, as collateral security for same and any other indebtedness due it by him, 30 shares of the capital stock of the Merchants' & Farmers' National Bank of Carthage, Tex., of the face value of $100 each. It further alleged and proved that on April 11, 1910, said Merchants' & Farmers' National Bank sold all its assets of every kind to appellant, and that the latter then assumed the payment of all the liabilities of the former as the same appeared on its books at the close of business on said 11th day of April, 1910. It alleged that said 30 shares of its capital stock was a liability of said Merchants' & Farmers' National Bank, and that appellant, by means of the transfer thereof to it, had "converted all of the properties, realties, securities and other assets of the Merchants' & Farmers' National Bank to its own use and benefit." The prayer was for judgment against Trabue for the amount of

the notes, for a foreclosure of the appellee bank's lien on the 30 shares of stock, and for judgment against appellant for the value of same. The trial was to the court without a jury. The court found there was due appellee bank on the two notes the sum of $8,055.59, and rendered judgment in its favor against Trabue for that sum. He further found that the 30 shares of stock were pledged to appellee bank to secure the payment of both notes, and decreed in favor of appellee bank a foreclosure of the lien it asserted on the stock. He further found that the stock was worth $80 per share, or $2,400, that appellant had acquired all the property of the Merchants' & Farmers' National Bank, and rendered judgment against it in favor of appellee bank for said sum of $2,400 as the value of said stock, directing that payment by appellant of said sum should operate as a payment pro tanto of the sum adjudged in favor of appellee bank against Trabue. Both appellant and the appellee bank appealed from the judgment rendered.

Brooke & Woolworth, of Carthage, for appellant. H. N. Nelson, of Carthage, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] In its first assignment appellant insists that the suit of the appellee bank against it was for "a conversion of the security upon which it claimed a lien"; that the conversion occurred on April 11, 1910; that the suit was not commenced until after the expiration of more than two years from that date; and therefore that the court below erred in overruling its plea setting up the statute of limitations of two years as a bar to the suit. If we thought the appellee bank's suit was for a conversion as claimed, we would overrule the assignment, because it does not appear from anything in the record we are authorized to consider when the suit was commenced. The case was tried on an amended petition filed April 23, 1913. The record does not disclose when the original petition was filed. But, as we construe the pleadings of the appellee bank, its suit against appellant was not for a conversion, but was to enforce a contract in writing made by appellant with the Merchants' & Farmers' National Bank, containing stipulations as follows: "Whereas, by a resolution duly adopted by the directors of the Merchants' & Farmers' National Bank of Carthage, Texas, made and entered on the minutes of said bank, it was agreed to sell and transfer to the Guaranty State Bank of Carthage, Texas, the securities, realty, properties and other assets of said corporation; and, whereas, the Guaranty State Bank by a reso-lution of the same date, which was passed by its directors, agreed to purchase the securities, realty, properties and assets of the Merchants' & Farmers' National Bank of Carthage, Texas, in consideration of the transfer of said securities, realty, properties and other assets of the said Merchants' & Farmers' National Bank to the Guaranty State Bank, the last-named bank does by these presents assume the payment of all the liabilities of the said Merchants' & Farmers' National Bank of Carthage, Texas, as the same appears on the books of the said Merchants' & Farmers' National Bank at the close of business on the 11th day of April, 1910." Such being the nature of the suit, the statute of limitations of two years did not apply to it.

[2] No question is made by the assignments—and, perhaps, one could not be made (Ins. Co. v. Anderson, 152 S. W. 816; Id. [Sup.] 155 S. W. 1176)—as to the right of the appellee bank, for lack of privity, to maintain a suit on the undertaking of the appellant, just set out. Therefore, in determining whether the judgment should be affirmed or not, the question which should be considered first is: Was the stock held by the appellee bank a liability of the Merchants' & Farmers' National Bank which appellant assumed to pay? Appellant does not contend, and reasonably could not, that the capital stock of a corporation, as between the corporation and a person holding such stock, is not a liability of the corporation. It does not contend, and could not, in face of the positive and uncontradicted showing in the record to the contrary, that the capital stock of the Merchants' & Farmers' National Bank did not appear on its books as one of its liabilities at the close of business on April 11, 1910. Clearly, therefore, the question propounded above must be answered in the affirmative; for appellant's undertaking was to pay all the liabilities of said Merchants' & Farmers' National Bank as same appeared on its books at the close of business on April 11, 1910.

[3] The liability of the Merchants' & Farmers' National Bank for the 30 shares of stock being one appellant assumed, we think its undertaking must be construed as binding it to make the payment due from it on account of same to the lawful holder of the stock. As the appellee bank, as the transferee of Trabue, was the lawful holder thereof, in the absence of conduct on its part creating against it an estoppel in favor of appellant, we think it was no answer to the suit for appellant to say, as it did, that it had paid to Trabue the sum due by it on account of its said undertaking. Therefore, in determining whether the appellee bank was entitled to recover against appellant or not, the question remaining is: Did it appear that the appellee bank was estopped from asserting the liability it claimed against appellant? It was shown that the Merchants' & Farmers' National Bank was placed in voluntary liquidation by a resolution of its shareholders, owning more than two-thirds of its stock, adopted April 11, 1910, and that notice of the fact was given in the manner required by

law. It also was shown, as appears from the contract set out (in part) above, that said Merchants' & Farmers' National Bank, on the day its said shareholders adopted said resolution, conveyed its assets to appellant. In the court below appellant contended, and it contends here, that the appellee bank should have been held to be estopped from claiming a recovery against it, because, it says, it appeared that the appellee bank knew said Merchants' & Farmers' National Bank had been placed in liquidation, and had conveyed its assets to appellant, yet it did not present said stock to appellant for payment within a reasonable time after it acquired such knowledge, and did not notify appellant it held said stock and claimed a liability against it on account of same, until appellant, believing he was the owner thereof and that it was complying with its undertaking whereby it bound itself to pay the liabilities of the Merchants' & Farmers' National Bank, had paid to Trabue the value of said stock, and until after said Trabue had become insolvent. It may be conceded it so appeared; still we do not think a question as to estoppel on the part of the appellee bank was presented. "Fraud, actual or imputed," said the court in Gulf City Trust Co. v. Hartley, 20 Tex. Civ. App. 180, 49 S. W. 902, "in the conduct of the party complained of, and injury from the fraud to the party complaining, are essential elements in every equitable estoppel." There is nothing in the facts relied upon showing wrong conduct on the part of the appellee bank. Even if it appeared it knew, before appellant paid Trabue, and before he became insolvent, that appellant had undertaken to pay the liabilities of the Merchants' & Farmers' National Bank, it did not appear it knew, or had any reason to believe, appellant contemplated paying or had paid the amount due on account of the 30 shares of stock to Trabue. If the appellee bank knew of the undertaking on the part of appellant, it had a right to assume that appellant, before it paid anything on account of said shares of stock, would demand that same be delivered to it for cancellation. That appellant failed to take such a precaution, and was content to pay Trabue for same on his assertion that he still owned and was entitled to demand and receive the sum due by appellant on account of it, was not the fault of the appellee bank.

[4] We are of the opinion there is no error in the judgment in so far as it determines that appellant is liable to the appellee bank for the value of the 30 shares of stock. In reaching this conclusion we have not considered the second and third assignments, in which appellant complains of the action of the court below in overruling, as it asserts, certain special exceptions contained in its answer to the petition of the appellee bank. There is nothing in the record showing that the exceptions were called to the attention of the court and therefore they must be deemed to have been waived. Chambers v. Miller, 9 Tex. 236.

The question remaining to be determined in disposing of the appeal is based on the finding by the trial court that the 30 shares of stock were worth $80 each. Appellant insists that, while it appeared that the book value of the shares was $104 each, it further appeared their market value was at most only $29 each, and that the judgment should not, in any event, have been against it for a sum in excess of the market value of the stock. The appellee bank, on the other hand, insists that the judgment in its favor against appellant should have been for a sum equal to the book value of the stock. We think the controversy is determinable by reference to the terms of the contract between appellant and the Merchants' & Farmers' National Bank, and that, as it is, it must be so determined. By the terms of that contract appellant assumed the "payment of all liabilities of the said Merchants' & Farmers' National Bank of Carthage, Tex., as the same appears on the books of the said Merchants' & Farmers' National Bank at the close of business on the 11th day of April, 1910." Clearly, therefore, the market value of the stock was not the measure of appellant's liability. It bound itself to pay the value of the stock as it appeared on the books of said Merchants' & Farmers' National Bank, and the recovery against it by the appellee bank should have been for that value. Therefore the judgment will be so reformed as to adjudge a recovery in favor of the appellee bank against appellant for the 30 shares of stock at a valuation of $104 per share, and, as so reformed, it will be affirmed.