WALTER BUTLER, ADMINISTRATOR, ETC., RESPONDENT, v. THE EQUITABLE LIFE INS. SOCIETY, APPELLANT.—93 S. W. (2d) 1019.

Kansas City Court of Appeals. February 17, 1936.

*Meservey, Michaels, Blackmar, Newkirk & Eager* and *Robert E. Coleberd* for appellant.

*Alexander & Green* of Counsel.

*Borders, Borders & Warrick, Wilfred Wimmell* and *Daniel L. Brenner* for respondent.

SHAIN, P. J.—The case at bar involves interesting questions arising on group policy insurance.

After a careful examination of the record and briefs filed in the case, we conclude that the statement of the issues as presented in the respondent's brief is an ideal statement adapted for a judicial opinion, and we adopt and use the same as follows:

"This suit was commenced by Ida Mae Butler on a group policy of insurance issued by the defendant on the lives of the employees of Loose-Wiles Biscuit Company of New York. Said policy contained disability provisions and Ida Mae Butler, an employee of said Loose-Wiles Biscuit Company, brought suit seeking benefits for total and permanent disability which commenced April 25, 1933. She died May 2, 1934, and the suit was revived on August 10, 1934, in the name of Walter Butler, her husband, who was appointed administrator of her estate by the Probate Court of Jackson County, Missouri, on May 28, 1934. This suit was prosecuted by him as such administrator.

"Under said group policy which was issued as of July 1, 1926, the deceased, Ida Mae Butler, was issued a certificate of insurance by the defendant, which certificate as well as the group policy contained disability provisions; that from August 1, 1931 (which was the date that the amount of insurance carried by Ida Mae Butler was increased to $1500), until the date of her disability, to-wit: April 25, 1933, the said Ida Mae Butler regularly paid the sum of 90c per month on said insurance policy and the Loose-Wiles Biscuit Company contributed 30c per month toward the premium of said policy and the defendant received as premium thereon the sum of $1.20 per month. The said group policy of insurance contained the following pertinent provisions: (a) that the defendant was insuring the lives of the employees of the Loose-Wiles Biscuit Company who elected in writing to participate in said policy (R.42); (b) that the employee had the right to change the beneficiary named in said certificate (R. 44); (c) that the certificate issued to Ida Mae Butler and said group policy provided that the application of the employee, together with the group policy, constituted the entire contract of the parties (R. 56); (d) that the policy could be terminated in one of two ways, viz.: in the event the employee left the employ of the Loose-Wiles Biscuit Company, or in the event the employee executed a written notice that he desired to discontinue his participation under said policy (R. 58); (e) that in the event the employee left the employ of said Loose-Wiles Biscuit Company, he had the right to convert said policy into a policy of life insurance in any one of the forms customarily issued by the defendant (R. 56); that the employee was to pay as premium 60c per month per $1000 and the employer the balance (R. 43, 53).

"The deceased, Ida Mae Butler, who held the above described certificate, retained the same until the date of her death and said certificate thereupon passed into the hands of her administrator. Upon this certificate and upon the group policy mentioned above, this suit was brought.

"The defendant attempted to show that said group policy was cancelled on August 1, 1932, and a new group policy was issued in its stead and place. The defendant's evidence showed that under the new policy issued on August 1, 1932, there was no provision contained therein for benefits in the event any of said employees became permanently and totally disabled but nevertheless each employee continued to pay the same amount of premium that he had formerly paid, although he only obtained under said new policy of insurance the same amount of life insurance, and the disability benefits were entirely eliminated.

"The defendant attempted to show that the deceased, Ida Mae Butler, had been given notice of the fact that the original policy of

insurance had been cancelled and that a new policy had been substituted for it, although the defendant's evidence showed that William R. Sullivan who testified for it did not know personally anything about the fact as to whether the deceased had been given notice of said cancellation. There was no showing by the defendant that a new certificate had ever been issued to the deceased under said new policy of insurance, nor was it shown that any demand had ever been made upon the deceased to surrender the certificate of insurance which she held under said policy issued by the defendant on July 1, 1926.

"The administrator prosecuted this suit for seven months' disability at the rate of $51.75 per month, or a total of $362.55, plus 10% as a penalty for vexations delay, plus $200 attorney's fees, plus interest and costs. The unanimous verdict of the jury was for the plaintiff in the sum of $362.55 and $71.46 as a penalty for vexatious delay and a further sum of $200 as attorney's fees, or a total sum of $633.71. Judgment was entered for said amount; defendant's motion for a new trial was overruled and this appeal has been taken to this court."

The appellant makes assignments of error as follows:

"1. The court erred in refusing to give defendant's instruction lettered 'B' at the close of the whole case, which instruction was in the nature of a demurrer to the evidence and should have directed a verdict for defendant for the reason that plaintiff did not make out a case against defendant under the group policy.

"2. The right to cancel a group policy is in the employer and its act of cancellation is binding upon its employees holding certificates issued under the group policy.

"3. No legal duty rested on defendant to give any notice of any kind to Ida Mae Butler or to the plaintiff (administrator of her estate) as to the cancellation of the group policy.

"4. The furnishing to the defendant by Ida Mae Butler, the employee, of due proof that she was totally and permanent disability benefits under the group policy. This was not done.

"5. The court erred in giving plaintiff's instruction No. '5' (113-114) which submitted the issue of penalties and attorney's fees to the jury. The facts did not warrant the submission of this issue to the jury.

"6. The verdict is excessive and void for the reason that the jury allowed a penalty of 19.7% of the amount sued for which is in excess of that permitted by Section 5929, Revised Statutes of Missouri, 1929.

"7. The court erred in permitting plaintiff to testify that he did not consent to or receive any notice of the cancellation of the group policy. Because (1) plaintiff sues as administrator of the

estate of Ida Mae Butler and did not come into existence as such until long after the group policy had been cancelled and (2) notice is not required.

"8. The court erred in permitting plaintiff to testify that Ida Mae Butler did not receive any notice of or consent to the cancellation of the group policy. Because notice was not required by the terms of the group policy.

"9. The court erred in giving plaintiff's instruction No. '2'' (111-113) for the reasons (1) this instruction assumes facts not in evidence, (2) it is not a proper statement of the law.

"10. The court erred in giving plaintiff's instruction No. '3'' (113). It is not a proper statement of the law applicable to this case.''

OPINION.

Assignments two, three and four are not assignments of error and can be considered only *arguendo* in connection with assignment one.

We will hereinafter refer to the respondent as plaintiff and the appellant as defendant to conform to the position in the circuit court.

As it becomes our duty to give to the plaintiff the benefit of all of the testimony most favorable to the plaintiff, we proceed first as to assignments seven and eight.

Assignments seven and eight make no other citation of authority than reference to authorities under points two and three. Points two and three make no assignment of error and are but statements of abstract principles of law. The authorities cited present no discussion of admissibility of testimony.

We find nothing in assignments seven and eight that discloses what objections were made to the trial court nor as to what questions made. The testimony of witness Brenner is scattered over forty-five pages of record. No indication as to where the objectionable matter may be found is referred to by page where found.

It is the duty of one, who is seeking to convict a trial court of error, as to the admission of testimony, not only to disclose what objection was made thereto, but also to point out the testimony claimed to be improperly admitted. Further it is not the duty of an appellate court to search the record for these matters when the same are not specified. [Blair v. Patterson 110 S. W. 615, 131 Mo. App. 122; Gardner v. Rovertson, 106 S. W. 645, 208 Mo. 605; Evans v. Williams, 4 S. W. (2d) 867.] There is no showing that would justify us in convicting the trial judge with error as to the point made.

The suit herein is primarily based upon a certificate of insurance, issued by defendant to Ida M. Stafford (Butler) on August 1, 1928. The said certificate is based upon a group policy of insurance issued

by defendant to Loose-Wiles Biscuit Company, on the lives of the employees of such company under date of July 1, 1926.

Under the provisions of the contract sued on, the insured employee paid 60c premium and the employer 30c per month.

The certificate to the insured employee contained the following clause:

"Termination and Conversion: The insurance upon the life of any Employee shall automatically cease upon his discontinuance of participation as evidence in writing signed by him and filed with the Society, or upon the termination of his employment with the employer in the specified classes of Employees; but in case of the termination of the employment for any reason whatsoever while insured under said policy, the Employee shall be entitled to have issued to him by the Society, without further evidence of insurability upon application made to the Society and upon the payment within thirty-one days after such termination of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Society, except term insurance, in an amount equal to the amount of his protection under the group insurance policy at the time of such termination."

The insured in this case worked as an employee of the Loose-Wiles Biscuit Company until April 25, 1933, when she was taken sick.

There is ample evidence from which it may be concluded that the insured employee was totally disabled from and after April 29, 1933, until her death on May 2, 1934, or a period of over twelve months.

The suit was brought by the insured in her lifetime and benefits for total disability for seven months are asked for.

There is ample evidence to the effect that 60c a month was taken out of the wages of the deceased, insured, up to and including the time when she became sick and disabled. The evidence discloses that this 60c premium was regularly remitted to the defendant company. As to application of premium, question is raised that calls for consideration later herein.

Under points and authorities No. 4, the affirmative statement of appellant is, that no due proof of disability was ever made.

The record discloses that a letter was sent to the insurance company on September 15, 1933, with stamp indicating delivery September 18th. This letter gave notice of disability and made demand for benefits. No additional proof was ever asked. We concluded there is ample evidence from which it can be concluded that requirement of further proof was waived. [Laupheiner v. Northwestern Mutual L. Ins. Co., 224 Mo. App. 422, 24 S. W. (2d) 1062.]

Having reached the above conclusion as to issue of fact, we are confronted with the real issue in the case at bar—the same being a question of law.

The question of law is presented in clause seven of the defendant's answer, which is as follows:

"That said group policy was on or about the 1st day of August, 1932, after due notice had previously been given to plaintiff, duly cancelled and terminated, and thereupon said group policy was marked 'Cancelled as of August 1, 1932,' and premiums were adjusted accordingly; that upon the cancellation of said group policy all of the insurance on the life of the said Ida Mae Butler under said group policy as well as by the terms and conditions of the certificate issued to the said Ida Mae Butler terminated and entirely ceased; that at the time of the alleged total and permanent disability of the said Ida Mae Butler there was not any insurance whatever on her life under the said group life insurance policy with this defendant; that this defendant does not owe plaintiff any sum or sums whatever; that defendant denies that during the time said group policy was in force and effect, and said Ida Mae Butler was in the employ of Loose-Wiles Biscuit Company of New York and/or its subsidiaries, she was or had become permanently and totally disabled by bodily injury or disease so as to be unable to perform any occupation or work for gain or profit within the meaning of the terms and provisions of the said group policy, and denies that she was so disabled at the time alleged in her said petition."

While the above clause presents issues of fact, which may arise for consideration, we are now concerned with the question of law.

The question referred to is so clearly stated in respondent's (plaintiff's) brief that we here quote the same.

"Apparently the only real issue involved in this case is whether it is necessary under a group policy such as was issued by the defendant on July 1, 1926, in order to cancel said policy, to obtain the consent of the employee or notify him of the fact that said policy is being cancelled."

Neither side have cited a single Missouri authority decisive of the question. So far as our research goes there is presented a question of first impression in Missouri.

Group insurance, while it has been in existence for some time, presents phases of law that are new.

In 32 C. J., page 950 (Insurance) for group insurance we are referred to 21 C. J., page 966 (Industrial Insurance) which subject is covered in one short paragraph and are referred to cross reference, where we are directed to "Group Insurance" 28 C. J., page 879, where we find the subject concluded in less than three printed lines.

The discussion of group insurance has frequently been indulged in by the courts of this State and in these discussions by this court and other appellate courts of this State, the principles applied to con-

tracts between two or more parties for the benefit of a third party has been very closely adhered to.

As to a class of group insurance contracts being entered into in this State, we conclude there has entered an element that is a departure from the ordinary contract entered into by others for the benefit of a third party. The departure is in this, to-wit: these group insurance contracts are being based upon considerations that must be paid by the third party. In other words, the third party to secure the benefits are compelled by the master policy or contract to, by their own act, accept the provisions of the contract entered into and are bound, by the master contract and by the certificate issued to them, to pay a consideration for benefits inuring to them under the contract.

The contract in issue herein provides:

"The cost of this insurance is to be borne jointly by the Employer and the employees participating in this insurance."

The contract further provides:

"The contribution from any individual employee for the insurance carried on such employee's life shall not be at a higher rate than 60c per month per $1000 of such insurance and the monthly contribution from the Employers shall not be less than 25% of the total monthly premium."

The contract further provides:

"Renewal, the Society will automatically renew this policy annually, conditioned upon the payment in advance of the monthly premiums computed as hereinbefore stated and conditioned further upon compliance with the special conditions stated on the face hereof, otherwise, the Society shall have the option of declining to renew this policy."

The certificate issued to the employee has the following clause:

"Termination and Conversion: The insurance upon the life of any Employee shall automatically cease, upon his discontinuance of participation as evidence in writing signed by him and filed with the Society, or upon the termination of his employment with the employer in the specified classes of Employees; but in case of the termination of the employment for any reason whatsoever while insured under said policy, the Employee shall be entitled to have issued to him by the Society, without further evidence of insurability upon application made to the Society and upon payment within thirty-one days after such termination of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Society, except term insurance, in an amount equal to the amount of his protection under the group insurance policy at the time of such termination."

The above provisions are based upon the express language of the master policy.

As to the particular contract before us, the provisions thereof suggests the idea that the meeting of minds, necessary to a contract, centers around the ideas of better employment conditions on the part of the employer and increased business at less overhead upon the part of the insurance company. In other words the scope of the contracts contemplates more than a mere contract between parties for the benefit of a third party, in that, the master contract provides first, for the consent, evidenced by application, and second, a consideration to be paid by the third party for the benefits provided for in the contract. Logical conclusions as to such a contract, we conclude, leads to the conclusion that when a third party makes application and pays the consideration as expressed in the master policy and the same is accepted by the parties in accordance with the terms of the master contract, that such payment and such acceptance endows the third party with a vested interest.

We must confess that the above conclusion has not been universally reached by the courts of many States of this Union.

In Davis v. Metropolitan Life Ins. Co., an opinion by the Supreme Court of Tennessee, reported in 32 S. W. (2d) page 1034, is found a case where in it is shown that the City of Knoxville secured a group policy from the Metropolitan Company insuring the life of members of the police and fire departments. It was provided in this policy that if terminated for any cause the employee had the privilege to within thirty days grace expressed as follows:

"A grace of thirty-one days without interest charge, will be granted to the employer for the payment of every premium after the first, during which period the insurance shall continue in force."

It is shown that the policy, *supra,* provided that 20 per cent of premium be paid by the employer and 80 per cent by the employee.

It is shown that the city not being satisfied with the division, as to premiums, cancelled the above policy as of midnight June 21, 1927, and took out a group policy with another company.

An employee by the name of Davis died one day under the grace period and his beneficiary sued upon the contract.

As the language that we shall quote from the above case should be considered in light of all the facts, it should be understood, that Davis had acquiesced in the change of policies and had taken out even more insurance in the new policy than in the original.

The beneficiary in the new policy had collected $2000 insurance thereunder and then sued to recover on the old policy under the theory that the cancellation of the old had not deprived the insured of the right to claim, as the death came within the grace period.

It should be further noted that in the policy sued upon, *supra,*

the employer had reserved the right to terminate the insurance. No such provision found in the policy sued upon in case at bar.

The decision in the Tennessee case, *supra,* was against the beneficiary and for the insurance company. In the opinion the court says:

"Moreover, we are persuaded that the power of cancellation of this policy, applied for and issued to the city of Knoxville, was in the city, and that its action was binding upon the several individual employees holding certificates issued thereunder. It appears that the courts which have considered these group policy contracts have held that the contracting parties were primarily the employer and the company. The policy is applied for by the employer and issued to the employer, and the insuring company has no direct contractual relations with the several individual employees. It is the employer who pays the premiums to the company, and there is no liability therefor to the company on the part of the individual employees. The rights which the employees acquire are incidental merely."

The following cases are authority for the general proposition that the cancellation or rescission by mutual consent of a life policy prior to the death of the insured completely terminates the rights of the beneficiary thereunder. [Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 2-S. Ct. 906, 44 L. Ed. 1088; Roth v. Mutual Reserve L. Ins. Co. (C. C. A.), 162 F. 282, 286; Equitable Life Assur. Society v. Stough, 45 Ind. App. 414, 89 N. E. 612, 613; Akers v. Hite, 94 Pa. 394, 39 Am. Rep. 792; German Ins. Co. v. Davis (Ark.), 12 S. W. 155.]

In a later decision, Missouri State Life Insurance Co. v. Hinkle, reported in 74 S. W. (2d) 1082, the Court of Appeals of Tennessee, Eastern Section, the decision in the 32 S. W. (2d) 1034, is followed.

While the opinion in Davis v. Metropolitan, *supra,* does not set forth the language reserving the right of the employer to terminate the group insurance policy, the opinion in Missouri Life Ins. Co. v. Hinkle, does set forth a provision of the policy sued upon which distinguishes from the case at bar. The provision is as follows:

"The insurance provided by the said policy for the employee shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee, or remitted by the employee to the employer, unless the employee shall elect to continue the insurance in accordance with the conversion privilege given on the second page of this certificate."

The group policy in issue in this case has no such provision as above. The only reference to termination in the contract before us is found in the certificate under head "Termination and Conversion," which we have quoted above, and in paragraph seven of the master policy.

The paragraph referred to quoted above is in perfect harmony with clause seven of the master policy.

It is significant of the contract herein in issue, that the only expression of termination is based upon tremination of employment or by the act of the employee evidenced in writing and filed with the Society.

The conclusions as stated in the Tennessee cases, *supra,* even though same can be concluded as applicable to the facts in the case at bar, have not been universally accepted by the Courts of the United States.

In Prudential Ins. Co. of America v. Ferguson (Ga.), 180 S. E. 503, is found a case directly in point on the question of notice to insured employee under group policy wherein the facts are very similar to the facts involved in the present case.

The statement of fact in the above case contains the following:

"Tom Ferguson brought suit against the Prudential Insurance Company of America for the alleged wrongful cancellation of an insurance policy, the petition as amended alleging, in part, that as an employee of the Georgia Railroad he became the owner of certificate No. 1101 of group policy No. 1819, issued by the defendant company on August 1, 1925, for which he paid $2.05 each consecutive month from August 1, 1925, to December 31, 1931, the date of the alleged wrongful cancellation of the policy by the defendant; that on January 1, 1932, a new certificate, No. 714 of group policy No. G-3690, was issued and delivered to petitioner in lieu of certificate No. 1101; that the second certificate remained in force until May 31, 1932, when petitioner was discharged from the service of the Georgia Railroad because of physical disabilities; that the monthly premium on both certificates was the same, and the policies were substantially the same, except that the first policy provided for total and permanent disability or physical incapacity, while the second policy contained no such disability clause. . . ."

In the course of the opinion in the above case the following language is found:

"Where a valid contract of insurance has been effectuated, the company cannot cancel the policy without the consent of the assured, except where it may be permitted to do so by statute or by reservation in the policy itself. Such a reservation is valid, but, under the general rule, it will be strictly construed against the company." [32 C. J., sec. 431, page 1245.]

Other cases are found wherein, though not directly in point with the case at bar, are counter to the holding in the Tennessee Cases, *supra,* and are in harmony with the Georgia case, *supra.* [See Johnson v. Inter-Ocean Casualty Co. (W. Va.), 164 S. W. 411; Deese v. Travelers Insurance Co. of Hartford, Conn. (N. C.), 167 S. W. 797.]

After a careful study of the authorities we conclude that as to such a group policy as is involved in this case; wherein the group policy itself imposes burdens upon the insured employee and provides for a consideration to be paid by the employee for the production and benefits he secures thereunder, then and in such event, such an insured is entitled to notice of cancellation. We therefore conclude against defendant as to its assignment No. One.

It is evident from the defendant's answer filed herein, that the defendant tried the case upon the theory that notice was required for the reason that defendant plead due notice of cancellation as an affirmative defense.

The question of whether or not notice of cancellation of the old policy was given and received is an issue of fact.

It is evident that from and after the new group policy was issued, the payments to the defendant Company was made by the Employer as applying, in so far as the Employer is concerned, to the insurance under the new policy. However, in so far as the insured employee is concerned the rate of 60c to be paid by the employee remained the same.

William R. Sullivan, manager, of the insurance department of the employer was placed upon the stand by the defendant and on cross-examination the following questions and answers appear:

"Q. Do you know whether Mrs. Butler continued to pay 90 cents per month on her insurance until the time she quit for Loose-Wiles? A. The records show that she paid under the new plan from August 1st, 1932, to April 25, 1933.

"Q. Before that did she pay the same amount, do you know? A. Yes, sir.

"Q. She paid the same amount? A. Yes, sir."

The defendant offered and the court permitted the introduction of an instrument purporting to be an application of the deceased employee for insurance under the new policy taken out by the employer. No proof was made as to the signature on this instrument.

The defendant undertook to establish notice to the deceased employee of the cancellation of the old policy and the substitution of the new policy by the customs and practices of the employer. This testimony was given by defendant's witness, Sullivan, and the Court was very liberal in the admission of this testimony.

As going to the conclusiveness of the testimony above referred to, the following questions and answers in the cross examination of Mr. Sullivan are significant, to-wit:

"Q. Mr. Sullivan, were you present when the distribution of either Exhibit A or Exhibit B or Exhibit C, any of these exhibits offered by the defendant, were made to the employees? A. No, sir.

"Q. Do you know then whether or not Mrs. Butler ever received this letter which is marked Exhibit C? A. She must have.

"Q. You never saw her get that, did you? A. No, but the three instruments were together. . . .

"Q. (interrupting) I didn't ask you that. I asked you if you ever saw her get that letter? Just answer the question, please. A. No.

"Q. So that you cannot testify of your own knowledge that she actually got his letter, can you? A. No, sir.

"Q. And you didn't see her sign this acceptance and pay roll deduction authority marked Exhibit A, did you? A. No, sir.

"Q. Now where were you when you gave these instructions to the heads of Loose-Wiles Biscuit Company to make delivery of these instruments? A. At the plant.

"Q. Mrs. Butler worked in the chocolate dipping room, isn't that correct? A. I wouldn't know.

"Q. You don't know Mrs. Butler at all? A. No.

"Q. And you don't know of your own knowledge whether she ever got this booklet marked Exhibit D, do you? A. No."

We conclude that an issue of fact was made for the jury on the question of notice.

In assignment Number Nine, the defendant claims error as to Instruction No. 2. Error is claimed that facts are assumed not in evidence. What facts? Were such called to the attention of the trial court? We are asked to convict the trial court of error without the above information. There is nothing presented that would justify us in doing so.

As to wherein instruction two is not a proper statement of the law, we are not informed. From a reading of the instruction, we conclude there is no error.

In defendant's assignment ten it is claimed that Instruction No. 3, is not a proper statement of the law. Wherein same is improper is not pointed out. From reading of the instruction, we find no error.

Defendant's assignment number five is as to the question of penalty for vexatious delay. The question must be determined by the attitude and conduct of the insurer prior to the time when suit is instituted.

No conduct on the part of the insurer, in the defense of an action when brought, can rightly be considered in determining the question of vexatious delay.

In the case at bar, it is shown in evidence that a letter from the representative of the insured to the defendant company was sent wherein facts of disability are stated and demands of benefits are made. In this communication a former like communication is referred to. No attempt is shown upon the part of the defendant company to enlighten the insured as to the matters inquired about. No attempt is shown on the part of the company to inform the insured of the attitude of the insurance company touching its position on the question of liability, until suit was brought when denial of

liability is based upon the allegation that the policy sued upon had been canceled after due notice to the insured.

In the brief filed by defendant the question is raised, that no notice of cancellation to the insured employee was required. This question we have concluded is, as to group insurance contracts, a new question in Missouri.

The general rule in Missouri is that an insurance company will not be penalized for a refusal to pay which is based upon grounds that present an open question touching its liability. A refusal based upon such grounds is not vexatious in that it presents a matter that the insurance company has a right to litigate.

As applied to the case at bar, the fact that defendant has, as based upon allegation that notice was given, denied the existence of a contract, the same makes it imperative that we give consideration of the position taken in the brief as going to that issue. However, as to the question of vexatious delay, we conclude that, based upon the circumstances shown in evidence as to actions and conduct before suit was brought, the fact that defendant on appeal has raised a *de novo* question for our consideration cannot be decisive of the question of vexatious delay and we conclude that we cannot convict the trial court of error in submitting the question as same was presented to that court.

Defendant's assignment six is that the judgment is excessive. In this there is merit. The verdict of the jury is for $362.25, the amount asked for, $71.46 penalty and $200 attorney fees. The penalty was limited to 10 per cent or $36.23 the amount allowed is $35.23 in excess. There is not such a showing that we can conclude that this excess is due to prejudice or passion. The jury may have inadvertently calculated the interest and included same as an element of penalty. As to how they reached the amount, we have no way to tell. The amount appears $35.23 excessive.

We conclude that the same can be taken care of by *remittitur*. This should have been attended to in the trial court.

Our opinion herein goes more direct to the question of notice. However, the question of consent of insured employee before cancellation of the master policy is presented.

We conclude as to the contract before us, that if the insured employee is given notice, and is awarded full opportunity to take the benefits of the clause, ''Termination and conversion,'' that his consent is not a prerequisite to cancellation.

We conclude that if the plaintiff will make and enter a *remittitur* within fifteen days from this date, in the sum of $35.23 so as to leave the judgment for that amount less, as of the day when rendered, then the judgment will stand affirmed; otherwise the judgment will stand reversed and cause remanded for a new trial. *Bland, J.,* concurs.