Frances M. CANNON,
Plaintiff-Appellant,

v.

KATZ DRUG COMPANY and Skaggs
Drug Centers, Inc.,
Defendants-Respondents.

No. KCD 28824.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Motion for Rehearing and/or Transfer
Denied Jan. 31, 1979.

Application to Transfer Denied
March 13, 1979.

Robert K. Ball, II, Linda L. Parker, Kansas City, for plaintiff-appellant; Jackson & Sherman, Kansas City, of counsel.

Danny L. Curtis of Niewald, Risjord & Waldeck, P. C., Kansas City, for defendants-respondents.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action for damages for breach of contract to provide group life insurance benefits. Verdict for plaintiff against defendants for $31,466.39. Appeal from judgment for defendants notwithstanding verdict and alternatively awarding them a new trial. The question with respect to the judgment n. o. v. is whether plaintiff's deceased husband and his beneficiary had vested rights and benefits under a group life insurance policy which could not be terminated without adequate timely notice. The questions with respect to the award of a new trial are whether the court erred in its verdict-directing instructions on plaintiff's case, and in receipt of evidence of conversations between plaintiff and her decedent and defendants' employees. Reversed with directions.

Plaintiff's petition alleged that Delphen K. Cannon was an employee of Katz Drug Company, and subsequently both Katz Drug Company and Skaggs Drug Centers, Inc.; that as their employee he held a certificate of group life insurance No. 13775–2692, Equitable Life Assurance Society of the United States, effective September 15, 1961, issued and delivered to him by Katz and secured through his employment with Katz, with a principal sum of $42,500, reduced to $31,875 at age 65, payable to Frances M. Cannon as beneficiary, which Katz promised would continue after his retirement on pension; that Delphen K. Cannon performed all conditions required of him; that Katz merged with or into Skaggs Drug

Centers, Inc.; that prior to and after July 1, 1971, Frances M. Cannon and Delphen K. Cannon received assurances from agents and officials of Katz and Skaggs that the group life policy would remain in full force and effect as to Delphen K. Cannon and that his life insurance benefits under Certificate 13775–2692 would continue after his retirement; that in September, 1971, after Delphen K. Cannon ceased work as an employee, plaintiff and Delphen K. Cannon were informed that the policy (Equitable 13775) which contained the benefits promised Delphen K. Cannon had been cancelled effective July 1, 1971; that plaintiff and Delphen K. Cannon never received a notice of cancellation of said policy before September, 1971; that Delphen K. Cannon died February 10, 1973; that Katz and Skaggs through the authorized acts of its agents and officers, assumed the obligations and duties of the policy (13775) issued by Equitable; that plaintiff and Delphen K. Cannon justifiably relied on the assurances made by the officers and agents of Katz and Skaggs and in the certificate of life insurance, and D. K. Cannon's right to have said benefits continued after his retirement on pension became vested because he continued his employment based on the promise contained therein; that Frances M. Cannon as beneficiary has never received payment of the sum due, $31,875 (less premiums of $308.61, i. e., $31,466.39).

D. K. Cannon worked for Katz Drug Company from 1925 until his retirement October 6, 1971, at age 65. He died February 10, 1973. Plaintiff was a former employee of Katz where she met D. K. Cannon. They were married in 1933.

In early 1958, Katz management held a meeting where fifteen or sixteen Katz executives, including Mr. Cannon, were given a retirement agreement which included a pension plan of monthly sums to such employees upon retirement. Mr. Cannon's retirement was under such plan as amended.

In 1961, D. K. Cannon, through his employment, made application for and received Group Life Insurance Certificate 13775–2692, by which Equitable Life Assurance Society certified that:

"Subject to the terms and conditions of Group Life Insurance Policy No. 13775, the life of * * * [D. K. Cannon] * * an Employee of Katz Drug Company * * * is insured for [$42,500] * *.

"The amount of insurance of any Employee who attains the sixty-fifth anniversary of his date of birth or retires on pension, whichever is earlier, shall be reduced to 75% of the amount for which he would otherwise be insured and shall further be reduced to 50% of such original amount upon his attainment of the seventieth anniversary of his date of birth. The employee shall have the same rights and benefits with respect to any portion of his life insurance terminated by reason of his age or retirement as though such portion of his insurance terminated due to termination of employment * * *."

Certificate 13775–2692 also provided:

"This individual certificate is furnished in accordance with and subject to the terms of the said Group Life Insurance policy, which policy, and the application therefor, constitute the entire contract between the parties. This certificate is merely evidence of insurance provided under said Group Life Insurance policy, which insurance is effective only if the Employee is eligible for insurance and becomes and remains insured in accordance with the provisions, terms and conditions of the said policy."

Equitable policy 13775 provided:

"The insurance hereunder of any employee shall cease automatically upon the occurrence of any of the following events:

"(1) the termination of this policy."

Frances Marie Cannon, his wife, was designated beneficiary.

Equitable policy 13775 was known as a self-accounting and self-administering policy in that Equitable supplied Katz with materials and training and Katz did all clerical work, including issuance of certificates and deduction of premiums from pay-

roll. Katz made deductions based on amount of insurance from Mr. Cannon's check to cover his insurance. Between 1961 and 1968, he received three or four job offers which he discussed with plaintiff. He rejected them because they could not duplicate the retirement benefits and insurance he was to receive upon retirement from his job with Katz.

In 1970, plaintiff and D. K. Cannon, as stockholders of Katz, received an announcement of an anticipated merger between Katz and Skaggs. They voted for the merger, as did sufficient stockholders to accomplish the merger in November, 1970, whereby Katz became a wholly owned subsidiary of Skaggs with its obligations assumed by Skaggs.

In April, 1971, plaintiff, in anticipation of her husband's retirement on October 6, 1971, called Latha Tanner, insurance clerk at Katz/Skaggs, for a record of the amount of insurance Mr. Cannon had, what it would be upon his retirement, and the premiums he would pay. Mrs. Tanner consulted with her supervisor, Mr. McGinnis or Mr. Ariagno, and responded to plaintiff's inquiry by written memorandum:

WRITE IT

To D. K. CANNON
Subject INSURANCE                                                                 Date 4/6/71

| Present Am't of Insurance | | Cost | Reduced 75% at Retirement or age 65 | Cost | Reduced at age 70 to 50% of Original Am't | Cost |
|---|---|---|---|---|---|---|
| Life Ins. | $42,500) | $27.80 | $31,875 | $19.13 | $21,250 | $12.75 |
| AD&D | 42,500) | | —0— | | —0— | |
| Major Medical | | Cost to remain the same as at present. | | | | |

Prior to July, 1971, Skaggs negotiated with Equitable for a group life insurance policy to replace 13775; and, effective July 1, 1971, 13775 was replaced by Group Life Insurance Policy No. 3160, a cost-free policy which terminated upon the retirement of employees, except those who retired prior to July 1, 1971. Four such employees, Donald Elder, Leo Plumberg, Albert Diamond, and Dean Widney, retired prior to July 1, 1971, and their life insurance benefits were continued after retirement under Group Life Insurance Policy No. 13775. Their retirement plan and insurance coverage was the same as Mr. Cannon's. Defendants admitted that all former employees who participated in group policy 13775 and who retired while it was in force but before June 30, 1971, who were still living, were covered by policy 13775.

Prior to June 28, 1971, Katz/Skaggs conducted a campaign, the purpose of which was to notify Katz employees of their benefits under the merger and the change in the life insurance policy. June 28, 1971, was designated SU (for sign up) Day, and packets of information were distributed through the stores and in the office. The materials advised that unless employees affirmatively elected to be excluded, they were automatically included under the new policy (3160) as of July 1, 1971. "Sign Up" was also advertised by store posters, recordings played in stores, and "teaser strips" in pay envelopes. Mr. Cannon did not elect to be excluded from 3160 and, on his retirement October 6, 1971, any coverage he had under 3160 terminated by its provisions.

Plaintiff never saw a "teaser strip," and denied receipt of any notice respecting her husband's insurance benefits. No certificate of the new policy was sent to Mr. Cannon. There was no conclusive evidence that Mr. Cannon received notice of any change in or cancellation of his insurance.

From time to time during her husband's employment, plaintiff called Vincent Davies in personnel records at Katz regarding errors in deductions from Mr. Cannon's pay

checks. He would advise how corrections would be made, and such corrections followed. She called Mr. Davies on July 8, or 9, 1971, because Mr. Cannon's check of July 8, 1971, showed no deduction for group life insurance. Mr. Davies replied, "You and Mr. Cannon don't have a thing to worry about. * * * Skaggs Drug Company was paying all premiums for all the employees * * *. Mr. Cannon's insurance was froze, policy 13775."

On August 31, 1971, a Mr. Carlson from Equitable visited Mr. and Mrs. Cannon about insurance, at which time Mr. Cannon showed his certificate under policy 13775 to Mr. Carlson. Mr. Carlson seemed surprised because he had no knowledge of such insurance, and left to call within a few days. When Mr. Carlson did not call, Mr. Cannon called him and, on September 7, 1971, he told Mr. Cannon that 13775 had been cancelled as of June 30, 1971. Mr. Cannon was shocked in disbelief, stating, "there must be a terrible mistake." Mr. Cannon then called Robert Ariagno in the personnel department at Katz and confronted him about the cancellation of his life insurance. Mr. Ariagno replied, "Yes, Dub, I knew it but didn't have the heart to call you," to which Mr. Cannon responded, "You didn't have the heart to call me after you just assured me not too long ago that my policy was froze, I had nothing to worry about."

On September 8, 1971, Mr. Cannon made an appointment to see Earl Katz, Chairman of the Board of Katz immediately after the merger. Mr. and Mrs. Cannon took his copy of the retirement agreement, his group life insurance certificate (13775–2692), and the "Write It" memorandum of April 6, 1971, to their meeting with Mr. Katz September 13, 1971. From September 13 to October 11, 1971, Mr. Cannon had two telephone conversations each with Mr. Katz and Morris Shlensky, also an officer of Katz, regarding insurance, in which he was told he had nothing to worry about regarding insurance and that everything would be taken care of. Mr. Shlensky said, "Dub, as you know, Earl left word with me to take over with Mr. Gutki in regards to a letter that was directed to him by Mr. Sigler to be signed and sent back to the company to have Mr. Cannon reinstated in the group life insurance. * * * Mr. Gutki has not signed a letter." Mr. Cannon asked "Why?" and Mr. Shlensky said, "I don't know but you don't have a thing to worry about, I am going to take this up personally with Sam Skaggs. * * * I do want you to go on. Earl told me about your trip [to Europe], that your daughter got you your pass. You plan on that trip, because I know you will be taken care of."

Mrs. Cannon talked with Dr. Gutki, president of Katz/Skaggs, on October 7, 1971, about signing a letter from Mr. Sigler at Equitable to have Mr. Cannon reinstated on the insurance. Dr. Gutki told her he had refused to sign such letter, that the matter was in the hands of Sam Skaggs's lawyers, and refused to discuss the matter further.

Such letter had been written by Mr. Sigler to Dr. Gutki after Equitable determined that certain titles (executive positions) could be accommodated for continuance of insurance. Equitable needed the authority of Katz/Skaggs sought by the letter to do so. Such authority was never given Equitable.

On September 7, 1971, Equitable, through a letter by Mr. Carlson, advised Mr. Cannon of a privilege of conversion of his life insurance under policy 3160. The offer was rejected because his retirement income was too small to cover it.

In November, 1971, Mr. Cannon wrote Mr. Sigler at Equitable regarding policy 13775 and his benefits thereunder. He was advised that 13775 had been cancelled by replacing policy 3160. All such correspondence was forwarded to Katz/Skaggs and a note was made for the file that they had not "heard the end of the matter." All records of the transaction were lost.

Mr. Cannon's retirement checks came from Katz until May 1, 1972, when they began coming from Skaggs and continued to come from Skaggs until his death while retired on pension February 10, 1973.

Appellant, to charge error in entry of the judgment for defendants notwithstanding

plaintiff's verdict, contends: Plaintiff pleaded and proved issuance by defendants of Group Policy 13775 with its benefits made available to D. K. Cannon; a promise by defendants to continue his group life insurance benefits after his retirement on pension; that he continued in employment until retirement in reliance on such promise; breach of such promise by cancellation of policy 13775 without effective precancellation notice to D. K. Cannon, thereby preventing him from exercising his vested right of early retirement in advance of the cancellation date so that the benefits which would in such case be due him under policy 13775 would continue after his retirement on pension.

Respondents, in support of their judgment notwithstanding, assert there was no promise by defendants to continue insurance on the life of D. K. Cannon; there were no contract rights vested in him, and he was not insured at his death.

■ The evidence shows that D. K. Cannon had a contributory group life insurance policy; regular deductions were made from his salary checks to pay its premiums. In such circumstances, Mr. Cannon was not a third-party donee beneficiary; he was a party to the insurance contract, "endowed with a vested interest." *Butler v. Equitable Life Assur. Soc.*, 233 Mo.App. 94, 93 S.W.2d 1019, 1024[6] (1936); *Morris v. Travelers Ins. Co.*, 546 S.W.2d 477 (Mo.App. 1977). When such a contract exists and there are provisions of benefit to the employee exercisable at termination of the policy, he is entitled to notice of termination so that his interests may be protected. *Butler v. Equitable Life Assur. Soc.*, supra, 93 S.W.2d l.c. 1025[7]; *Nick v. Travelers Ins. Co.*, 354 Mo. 376, 189 S.W.2d 532 (1945). Entitlement to notice is particularly significant in this case because Katz/Skaggs was the agent for the issuing insurance company in servicing the policy. *Morris v. Travelers Ins. Co.*, supra.

In April, 1971, in contemplation of retirement in October, 1971, a request was made of Katz/Skaggs on behalf of the insured for a statement of life insurance to be in force upon retirement and the premiums therefor. The "Write It" memorandum was issued to D. K. Cannon in response to such request. In its context, it represented that life insurance would be in existence upon his retirement. If D. K. Cannon had been advised of the proposed cancellation he could have exercised his right of early retirement and, at the loss of the difference between some three months' salary and his retirement, preserved over $31,000 life insurance, as at least four fellow employees did. The "Write It" memorandum constituted an offer for a unilateral contract which D. K. Cannon accepted by continuing in his employment rather than taking early retirement. *Hinkeldey v. Cities Service Oil Co.*, 470 S.W.2d 494, 500–501 (Mo.1971). See also *Coffman Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763, 768–769 (Mo.App.1975).

■ Whether notice of cancellation was given is an issue of fact, *Butler v. Equitable Life Assur. Soc.*, supra, 93 S.W.2d l.c. 1025[8]; and such question was resolved by the jury against the defendants.

Respondents rely primarily on the discussions of group insurance contracts in *Longley v. Prudential Ins. Co. of America*, 161 S.W.2d 27 (Mo.App.1942); *Satz v. Prudential Ins. Co. of America*, 225 S.W.2d 480 (Mo.App.1949); *Carter v. General American Life Ins. Co.*, 452 S.W.2d 253 (Mo.App.1970); *Straub v. Crown Life Ins. Co.*, 496 S.W.2d 42 (Mo.App.1973); *Lowes v. Pan-American Life Ins. Co.*, 355 F.2d 433 (8th Cir. 1966); *Adair v. General American Life Ins. Co.*, 124 S.W.2d 657 (Mo.App.1939), all of which are adequately distinguished for purposes of this case by *Butler v. Equitable Life Assur. Soc.*, supra, and *Morris v. Travelers Ins. Co.*, supra.

■ Respondents also would deny this action to plaintiff in her own capacity under Section 537.010 RSMo which provides for the survival of tort actions against property to the personal representative of the decedent.

Section 507.010 RSMo provides that every action shall be prosecuted in the name of

the real party in interest. Mrs. Cannon was the beneficiary of her husband's life insurance; his personal representative would have no interest in such benefits. Accordingly, she is the party in interest to sue for her benefits. *Wilson Co. v. Hartford Fire Ins. Co.*, 300 Mo. 1, 254 S.W. 266 (1923).

Plaintiff's action was submitted by Instructions 3 and 4:

## "INSTRUCTION NO. 3

"Your verdict must be for plaintiff and against defendant Katz Drug Company if you believe:

"First, defendant Katz issued or caused to be delivered a certificate of group life insurance under Policy No. 13775 to D. K. Cannon, which promised the benefits described would continue after his retirement on pension, and

"Second, defendant Katz, by and through its agents and servants, made oral promises to D. K. Cannon that his life insurance benefits would continue on after his retirement on pension, and

"Third, plaintiff was the beneficiary of the promise made by defendant, and

"Fourth, D. K. Cannon relied upon the promises made in continuing his employment, and

"Fifth, defendant knew or should have known that D. K. Cannon would rely upon said promises, and

"Sixth, defendant cancelled the policy by which D. K. Cannon's life insurance benefits were to continue after his retirement on pension, and

"Seventh, defendant failed to give D. K. Cannon notice before said cancellation in time for him to assure continuance of his coverage under group policy No. 13775, and

"Eighth, D. K. Cannon retired on pension, and

"Ninth, defendant did not continue the promised benefits described in the certificate of life insurance after D. K. Cannon retired on pension, and

"Tenth, because of such failure, defendant's contract obligations were not substantially performed, and

"Eleventh, plaintiff was thereby damaged.

"(M.A.I. 26.02, 31.08, and not in M.A. I.)"

## "INSTRUCTION NO. 4

"Your verdict must be for plaintiff and against defendants Katz Drug Company and Skaggs Drug Centers, Inc., if you believe:

"First, defendant Katz issued or caused to be delivered a certificate of group life insurance under Policy No. 13775 to D. K. Cannon which promised the benefits described would continue after his retirement on pension, and

"Second, defendants Katz or Skaggs, by and through their agents and servants, made oral promises to D. K. Cannon that his life insurance benefits would continue on after his retirement on pension, and

"Third, plaintiff was the beneficiary of the promise made by defendants, and

"Fourth, D. K. Cannon relied upon the promise made in continuing his employment, and

"Fifth, defendants knew or should have known that D. K. Cannon would rely upon said promise, and

"Sixth, defendant Skaggs Drug Centers, Inc., assumed the obligations of defendant Katz Drug Company to D. K. Cannon, and

"Seventh, defendants cancelled the policy by which D. K. Cannon's life insurance benefits were to continue after his retirement on pension, and

"Eighth, defendants failed to give D. K. Cannon notice before said cancellation in time for him to insure continuance of his coverage under the group policy No. 13775, and

"Ninth, D. K. Cannon retired on pension, and

"Tenth, defendants did not continue the promised benefits described in the certificate of life insurance after D. K. Cannon retired on pension, and

"Eleventh, because of such failures, defendants' contract obligations were not substantially performed, and

"Twelfth, plaintiff was thereby damaged.

"(MAI 26.02, 31.08, and not in M.A.I.)"

Appellant charges the court erred in granting defendants a new trial on the foregoing instructions, and asserts that they were proper statements of plaintiff's theory and in conformity with M.A.I.

Respondents argue in support of the trial court's action that the instructions are misleading and confusing, in that paragraph First requires a finding that the certificate contained a promise of benefits after retirement on pension, and are multiple directions against defendant Katz. Some emphasis is also placed on discrepancies in punctuation and the singular and plural promise.

As recognized, there are no Missouri Approved Instructions covering this case. Accordingly, under Rule 70.01, the instructions needed only to cover the case as pleaded and proved in the form of Missouri Approved Instructions. The pleadings and evidence have been considered sufficient in presentation of a theory of recovery. The case is out of the ordinary and perhaps confusing in that respect. Nevertheless, the instructions track that theory.

Both instructions did direct a verdict against Katz. Such was not undue emphasis, however, because, under the pleading and evidence, Katz alone could have been liable to plaintiff or Katz jointly with Skaggs could have been liable.

As stated, *Jackson v. Cherokee Drug Co.*, 434 S.W.2d 257, 263 (Mo.App. 1968), "absolute perfection in form is not the test. The test is whether the instruction is substantially correct." This not-in-MAI instruction meets that test and the test of understanding by a jury of laymen possessing common sense in *Wims v. Bi-State Development Agency*, 484 S.W.2d 323 (Mo. banc 1972).

Appellant charges the court erred in granting defendants a new trial for receipt of testimony from plaintiff concerning conversations between plaintiff and her husband, and Vincent Davies, Robert Ariagno, Earl Katz, and Morris Shlensky. She asserts that all such testimony was properly received on the issue of reliance.

There is some doubt whether defendants made timely objections necessary to preservation of error. In any event, the record shows that Davies, Ariagno, Katz, and Shlensky were employers or officers of Katz/Skaggs in positions to speak to the Cannons' insurance problem. Cf. *Kind v. Staton*, 409 S.W.2d 253 (Mo.App.1966), where a "lady in the union office" was not sufficiently identified to make hearsay from her admissible. The statements on that subject attributed to the Katz/Skaggs officers by Mrs. Cannon were admissible, not to prove the truthfulness of such statements, but to prove the state of mind of Mr. and Mrs. Cannon as it relates to whether they relied on the fact of insurance and took no further action. Indeed, the statement attributed to Mr. Davies, when received, was limited to that effect by instruction to the jury. The same is true of the statement attributed by plaintiff to her husband. See discussions in *Trask v. Davis*, 297 S.W.2d 792, 799 (Mo.App.1957); *Green v. American Life & Accident Ins. Co.*, 93 S.W.2d 1119, 1124 (Mo.App.1936).

Judgment for defendants notwithstanding verdict for plaintiff reversed; cause remanded with direction to reinstate verdict for plaintiff and enter judgment thereon for plaintiff.

All concur.