13860

POWELL v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES

(174 S. E., 649)

*Messrs. Thomas, Lumpkin & Cain* and *McDonald, Macaulay & McDonald,* for appellant,

*Messrs. Douglas & Douglas,* for respondent,

June 1, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appellant issued and delivered to United States Rubber Company a group policy of insurance on the lives of its employees, which included employees of Winnsboro Mills, a subsidiary corporation of United States Rubber Company. The premiums were payable by the Rubber Company, and there is no question here as to their prompt payment at all times. An insured employee contributed from his or her wages a proportionate part of the premiums. The insurance carried on his or her life was only to be of force and effect while the insured was an employee of the Rubber Company. The certificate of insurance, involved in this case, was issued and delivered by the Insurance Company to a young woman who, at the time of the issuance and delivery, was an employee of the Winnsboro Mills, and the respondent was designated as beneficiary therein. The insured died on February 27, 1932.

Payment of the amount of insurance to the beneficiary being declined, this action for its recovery was instituted by him in the Court of Common Pleas of Fairfield County.

The appellant resisted payment on the ground that the insured had discontinued her employment with the Winnsboro Mills on December 10, 1931, and that the certificate, pursuant to its provisions, was canceled as of February 1, 1932, and, consequently, there was no contract in existence at the time of the death of the insured. The answer further alleged that no contributions in aid of premium payments had been collected from the insured on her policy subsequent to December 10, 1931, and, therefore, by the provisions of the certificate, it had become lapsed, and was of no effect at the time of the death of the insured.

In the trial of the cause, before his Honor, Judge Sease, the appellant made appropriate motions for both a nonsuit and direction of verdict, but these were overruled. The case being submitted to the jury, a verdict was returned in favor of the respondent. A motion for a new trial on the part of the Insurance Company being refused, it has appealed from the adverse judgment to this Court.

The six exceptions of the appellant question the correctness of the rulings of the trial Judge in a matter relating to the introduction of testimony, the refusal to grant motions for a nonsuit and a directed verdict, and certain instructions to the jury. Without setting forth these exceptions, or the grounds thereof, in detail, we shall pass upon what we conceive to be the material issues involved in the appeal.

At the instance of the respondent, the trial Judge instructed the jury as follows: "While an employee who voluntarily severs his or her employment, or who to his knowledge is discharged for any reason or for no reason, loses his or her benefit under the policy, I charge you that the beneficiary cannot be arbitrarily deprived of the benefits of the policy; neither the insured nor the beneficiary can arbitrarily be deprived of its benefits without notice."

In connection with the instruction, the Judge commented: "I charge that, gentlemen. That is on the ground that this woman under the policy—under the admission of the testimony contributed her money to the carrying on of the policy. If the employer, that is the Mill, had contributed all of the money, then that principle of law would not apply."

It does not seem necessary for us to determine if the quoted instructions were erroneous, but we may say that there seems to be some authority for them in the decisions of this Court in the cases of *Antley v. New York Life Insurance Company*, 139 S. C., 23, 137 S. E., 199, 60 A. L. R., 184; *Wannamaker v. Stroman*, 167 S. C., 484, 166 S. E., 621; and *Thompson v. Pacific Mills*, 141 S. C., 303, 139 S. E., 619, 55 A. L. R., 1237.

Even if we should concede with the appellant that there was some error in the instructions, we would, nevertheless, be compelled to hold that it was not sufficient to force a reversal of the judgment below. The reason for this view is due to the fact that it seems all through the trial of the case the appellant admitted that the only question to be decided by the jury was whether or not the insured occupied the status of an employee of the Winnsboro Mills at the time of her death. Certainly, the presiding Judge had taken that view. Almost at the outset of his charge, he said, "I am going to adopt the statement made" by one of the appellant's counsel "that the only question in this case is, whether or not at the time of the death of the insured, she was employed by the defendant company" (referring of course, when he used the words "defendant company" to the Winnsboro Mills). Later on, in his charge, the Judge said: "And I think the pleadings fairly warrant the admission, or the contention, of counsel who represent the defendant, who first addressed you on behalf of the defendant, that the issue before you, is whether or not, at the time of her death, she was an employee of the mill."

An inspection of the pleadings and a careful reading of the evidence adduced in the trial, with the accompanying exhibits, impel us to the conclusion that the learned trial Judge correctly sized up the situation, and really submitted to the jury for their determination the only issue in the case which they were required to pass upon, namely, if the insured, at the time of her death, occupied the relationship of an employee of the Winnsboro Mills. There was no endeavor on the part of any of the counsel for appellant, present at the trial, to correct the view of the pleadings, and the issue to be determined, announced by the Judge, and it was the duty of counsel to advise him if he had fallen into error as to the issues made by the pleadings.

After reading from the provisions of the policy, the trial Judge instructed the jury as follows: "Now, gentlemen, I instruct you that if the insured was only temporarily laid off, or relieved temporarily, with both parties understanding that she was to be re-employed, or that she was to continue her relation with the mill, then that would not be a discharge, and she would be deemed still to be in—at the time of her death, to be in the employment of the Company."

The appellant does not complain of any error in the legal principles announced in those instructions, but contends that they were inapplicable and harmful, since there was no testimony tending to show an understanding between the mills and the insured at the time she was "laid off" that she was to be re-employed, or that she was to continue her relation with the mills, and, on the contrary, the testimony clearly showed that the insured was laid off on account of lack of work, without any agreement to take her back at any time, and there was an absolute and unconditional termination of the employment as of December 10, 1931.

The exception may be considered along with those relating to the refusal to grant a nonsuit or to direct a verdict in the appellant's favor, on what we have already stated to be

the main issue in the case, the relation of the insured, at the time of her death, to the Winnsboro Mills.

It is admitted that on February 27, 1932, the day of her death, the insured was not in the active service of the mills, where, prior to December 10, 1931, she had been working, a fact about which there is no question. The position taken by the respondent is that she was temporarily laid off, but not discharged, and that, as an employee of the mills, within the provision of the group insurance policy, her employment status had not been affected by the "lay off" taking her out of active service.

The appellant's main reliance seems placed on a "leaving slip" card, kept by the Winnsboro Mills, bearing the notation "laid off until we can use her again" (such card being offered in evidence through Mr. Sargeant, the overseer of the spinning department), coupled with somewhat similar reliance on another card exhibit, introduced over respondent's objection that it was incompetent, which was identified in evidence as "the insurance register concerning certificate A-27553 issued to" the insured "as made up by Winnsboro Mill," on which the "termination date" of her insurance was filled in as of date February 1, 1932, it being the holding of Judge Sease (although the card does not show when the entries appearing on it were made) that the card was competent but not conclusive.

The provisions of the group policy affecting the rights of beneficiaries holding certificates of insurance issued under it are in substance as follows: (1) The policy premiums, payable monthly in advance at the home office of the Insurance Company, are declared under the express terms of the policy to be payable to the society by the employer; (2) a period of thirty-one days' grace for the payment of the premiums is specifically granted, during which period it is provided that the insurance shall continue in force; (3) the obligation is placed on the employer to furnish the Insurance Company with the names of the eligible employees, and any

insurance data concerning them, and also to report during the continuance of the insurance contract "all changes of status in the group of employees affecting the amount insured" under the group policy provisions, and that the insurance covering such changes and the premium readjustment corresponding to the changes shall become effective from the date when such changes occur; and (4), lastly, under the topic heading "Terminations," the policy makes provision that the insurance affecting any employee covered by the group contract "shall automatically cease and determine upon such employee's discontinuance of participation as evidenced in writing signed by the employee and filed with the Society, or upon the termination of such person's employment with the employer in the specified classes of employees without regard to the cause of such termination, except as the employer may elect that all employees who are insured hereunder are temporarily laid off * * * or are temporarily disabled, shall be considered to be in the employment of the employer during such period."

It is sufficient to say that an examination of the record does not disclose any testimony or exhibit offered in evidence to indicate any report made by the Winnsboro Mills' to the Insurance Company announcing a changed situation of the insured; nor does the record show any evidence of a termination of her employment within the terms of the group policy. The insurance card of this employee, kept by the Winnsboro Mills, falls far short, we think, of either conclusive proof of changed employment status, or conclusive proof of her policy termination, in the absence of which it was clearly the duty of the trial Judge to submit the case to the consideration of the jury.

Even if the insured's insurance had been regarded, under the testimony, as having been terminated on February 1, 1932, as seemingly indicated by the notation of termination appearing on her certificate register

card (irrespective of whether such termination was under the provisions of the clause relating to "terminations," or because of default in the payment of premiums as required by the "payment" clause), insurance protection would nevertheless be afforded the beneficiary holding her certificate in view of the group plan provision that "a grace of thirty-one days will be granted  *  *  *  during which period the insurance  *  *  *  shall continue in force."

There was evidence to the effect that the insured, a young unmarried woman, on the day she was "laid off," was in an unfortunate physical condition, evident to all those who came in contact with her, and that other young women, in the same condition, were, about the same time, temporarily "laid off"; and that it was the custom of the mill not to work women in that condition.

To the contention of the appellant, under its first exception, that testimony was inadmissible to show any custom or course of business existing or practiced in the Winnsboro Mills, as to the manner and effect of "lay off," it is sufficient, in our opinion, to refer to the contract group plan provision under the topic heading "Terminations," where (from a standpoint of insurance coverage), it is placed in the discretion of the employer to elect that "temporarily laid off" or "temporarily disabled" employees "shall be considered to be in the employment of the employer during such period." Since it was left by the terms of the group plan for the company to determine for itself whether an employee's discontinuance from its service should be regarded as a temporary lay off or as a permanent severance from employment, it follows, obviously, that resort may properly be had to any attendant circumstances or to precedents of custom or practice arising from similar situations which are allowable in evidence as tending to throw light on the occurrence of the "lay off"; and to that end the practice or course of business previously existing at the Winnsboro Mills, as instanced in others similarly situated, was of some evidential value, suffi-

cient, at least, under the circumstances, to warrant the introduction of the testimony.

From an examination of the entire record, with especial attention to the exceptions, we do not find any error which, in our opinion, would justify a reversal in the case. The one main issue, submitted to the jury, has been decided against the position of the appellant. All the other questions were only incidental to that; and even if there was error concerning them, it would not warrant a reversal of the judgment.

The judgment of this Court is that the judgment appealed from be, and the same is hereby affirmed.

MESSRS. JUSTICES STABLER, CARTER, BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.