This is an action in assumpsit instituted by Mary Poch, appellant, as named beneficiary, to recover unpaid total and permanent disability benefits under a contract of life and disability insurance evidenced by a group policy issued by the Equitable Life Assurance Society of the United States (hereinafter called "the Society"), appellee, to the Homestead Steel Works Employees' Insurance and Safety Association (hereinafter called "the Association"), an unincorporated association of employees of the Homestead Steel Works of the Carnegie Steel Company, and by a subsidiary certificate issued to appellant's son, George Poch, deceased, under the terms of the group or master policy. A jury trial resulted in a verdict for appellant in the sum of $4237.50, representing the face amount of the policy and an allowance for interest, which was set aside by the court en banc, and judgment non obstante veredicto was entered in favor of the appellee Society. This appeal followed.
The group policy, whereby the Society contracted to insure such of the members of the Association as elected or should thereafter elect to become insured thereunder, was originally issued to the Association on June 30, 1926. By its terms it insured members who so elected (1) against loss of life which should occur while insured under the group policy, and (2), in lieu of the death benefit, against total and permanent disability which should commence while thus insured and prior to attaining age 60, the amount of insurance in force on the date of the commencement of such disability to be paid to the insured in equal monthly installments, according to a certain table. Disability installments remaining unpaid upon the death of the member were made payable to the named beneficiary as they became due, with the right to commute at 3 1/2% interest per annum. Appellant's insured having made application for insurance under the group policy, an individual certificate was issued to him, *Page 122 
bearing the same date as the master policy, insuring him in the amount of $3000. This certificate, which recited that it was furnished in accordance with the terms of the group policy "which together with the Association's application therefor constitutes the entire contract between the parties", contained certain provisions of the master policy as to terms and conditions under which benefits would be paid, including the provisions relating to total and permanent disability.
As contemplated by the insurance plan under the group policy, the proportionate amount of the total premium payable on account of the insurance coverage of each employee participating in the insurance was collected monthly by the Association from the employee, as dues, through wage deduction authorization slips or, if no pay was due the employee for a monthly period, in cash, and one sum was then turned over to the Society by the Association representing the entire monthly premium of the insured members. No part of the premium was paid by the employer, as is often the case in group insurance. The policy was originally issued for the term of one year, but contained a provision for automatic renewal by the Society upon each anniversary of the Register date and, in accordance with such annual renewal provision, was renewed on June 30, 1932, in the form originally issued, for the further period of one year.
On or about January 18, 1933, while still a member of the Association and an employee of the Carnegie Steel Company, according to the company's employment records, George Poch, the insured, became and was totally and permanently disabled, as the jury found, by reason of cirrhosis of the liver. His dues were paid in full until February 28, 1933, but none were paid thereafter, in consequence of which the Association, on July 13, 1933, terminated his membership for nonpayment of dues and notified the Society that he was no longer a member of the Association or entitled to participate in the insurance under the terms of the group policy. Poch died on *Page 123 
October 1, 1933, at the age of 35 years, and the present suit was instituted on April 30, 1937, by appellant, as named beneficiary, to recover the full amount of disability benefits provided for by the "total and permanent disability" provision contained in the master policy, as originally issued and renewed on June 30, 1932, and in the individual certificate issued thereunder, no payments having been made to the insured during his lifetime.
In the interim between June 30, 1932, the date of renewal of the original policy for another year, and January 18, 1933, the date of Poch's disability, the Society, in accordance with a recommendation by the board of directors of the Association, attached a rider to the master policy which purported to cancel the "total and permanent disability" provision as of September 1, 1932. The rider, which was executed by an assistant registrar of the Society and by the Association's chief clerk, provides: "It is hereby agreed that the provision appearing in said policy entitled Total and Permanent Disability Provision shall be void on and after September 1, 1932, and that said policy shall thereafter provide for payment of insurance only in the event of death of any member occurring while insured thereunder. Provided, however, that the Total and Permanent Disability Provision shall remain in effect with respect to any insured members who may have become entitled to benefits thereunder prior to September 1, 1932". Notice of cancellation of the provision for disability benefits was posted on a bulletin board at the Association's office and new individual certificates were issued to the Association for delivery to the insured members, but it does not appear how long the notice remained posted or that it was seen or read by Poch, nor does it appear that a new certificate was ever delivered to him or that any demand had been made upon him to surrender the certificate held by him under the terms of the original policy. Neither the master policy nor the certificate issued to the insured employee reserved to the Society or the Association any right to *Page 124 
cancel or eliminate any of the effective provisions of the insurance contract during the policy year, and it appears that the amount of premiums paid by the insured to the Association and by it transmitted to the Society, from the renewal date of the policy to and including the premium for February, 1933, was the same as would have been payable by him under the terms of the original policy. The cancellation agreement provided for no adjustment of the premium rates by reason of the elimination of the disability clause.
The Society here concedes that appellant's insured was not consulted with reference to cancellation of the provision for disability benefits and did not consent thereto, as also that, so far as the record shows, there is no evidence to establish that he was ever advised of the change or had any knowledge or notice thereof, but contends that the mutual agreement between it and the Association, evidenced by the rider attached to the policy, that the disability provision should be void on and after September 1, 1932, was nevertheless effective and binding upon the insured members and that, consequently, at the time of accrual of Poch's disability, such provision was not in effect, as the court below held, basing its entry of judgment for the Society solely on this ground. Appellant contends, on the other hand, that upon renewal of the original policy on June 30, 1932, the insured acquired a vested right to the insurance afforded by the terms of the policy, which it was beyond the power and authority of the Society and Association to impair by limiting or changing the risk, without the consent of the insured; further, that the insured was at least entitled to notice of any such change.
In Miller v. Travelers Ins. Co., 143 Pa. Super. 270,*
two group policies were issued to the Lehigh Railroad Company, one of which was a group life policy covering railroad employees who joined the plan and who, *Page 125 
like the insured in the present case, authorized premium payments to be deducted from their wages, and individual certificates were issued naming the appellant in that case as beneficiary. Both of the group policies were later cancelled in their entirety by mutual agreement between the insurer and the Railroad Company, of which the insured was notified but to which he did not consent. The insured died subsequent to the effective date of cancellation, whereupon the beneficiary sued to enforce the group policies, contending that their cancellation was ineffective, since made without the insured employee's consent. It was held that, under the circumstances there presented, the cancellation by mutual agreement of the insurer and the company was effective and binding upon the insured, despite his lack of consent. The court said (pp. 273, 274, 275): "It has been uniformly held, in decisions dealing with group life and accident insurance policies substantially similar to those here involved, that the insurer and employer are the primary contracting parties. Whether or not a policy shall continue depends on their will. It is not within the power of the beneficiary to keep a group contract of insurance in force or to abrogate it. The insured employee or his beneficiary have no greater rights than are provided in the policy, certainly no vested right which would prevent cancellation by mutual agreement between the insurer and the employer, especially where reasonable notice of cancellation is given to the employee. . . . The life insurance policy before us is for a distinct form of insurance differing in many if not most of its aspects from the ordinary life insurance, where usually a beneficiary may acquire a vested interest. . . . Here the insured received twenty-eight days notice of the intended cancellation and in that interim took no steps to avail himself of the right to subscribe to other insurance." The court held further (p. 276) that, in the absence of a provision in the policy to the contrary, there is no principle which requires such a policy to be cancelled only on its anniversary date and, *Page 126 
therefore, nothing which would prevent cancellation as of the end of any month when the premiums were payable. See also:Lancaster v. Travelers Ins. Co., 54 Ga. App. 718, 189 S.E. 79;Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655,32 S.W.2d 1034; Kloidt v. Metropolitan Life Ins. Co., 18 N.J. Misc 661, 16 A.2d 274. Compare: Williams v. John Hancock Mut.Life Ins. Co., 154 Misc. 504, 277 N.Y. S. 429 (aff'd., 283 N.Y. S. 87); Hinkler v. Equitable Life Assur. Soc., 61 Ohio App. 140, 22 N.E.2d 451; Prudential Ins. Co. of America v.Ferguson, 51 Ga. App. 341, 180 S.E. 503; Johnston v.Metropolitan Life Ins. Co., 52 Ga. App. 759, 184 S.E. 392.
Had the Society, in the present case, given the insured employee reasonable notice of the intended cancellation of the disability provision, by mutual agreement between it and the Association, then, under the decision in Miller v. TravelersIns. Co., supra, it would follow that such provision was effectively eliminated as of September 1, 1932, as the Society contends. In the absence of notice to the insured, it does not follow, however, as the opinion in the Miller case recognizes, that the insurer can thus effectively be relieved from liability, especially where, as in the instant case, the premiums are paid by the insured employee. Thus, in Butler v.Equitable Life Assur. Soc., 233 Mo. App. 94, 93 S.W.2d 1019, where, in an action, like the present, for disability benefits under a group policy, the insurer defended on the ground that the old policy had been cancelled by mutual agreement between it and the employer prior to the incurring of the insured employee's disability and the new policy then issued did not contain a total disability provision, the court held that the employee's consent was not a prerequisite to cancellation, but affirmed a judgment against the insurer, made upon a finding that notice of cancellation had not been given, saying: "After a careful study of the authorities, we conclude that as to such a group policy as is involved in this case, wherein the group policy itself imposes burdens upon the insured employee and *Page 127 
provides for a consideration to be paid by the employee for the protection and benefits he secures thereunder, then and in such event, such an insured is entitled to notice of cancellation." There, as here, the same rates of premium were payable under both the old and new policies and the employee contributed to the cost of the insurance. To this same effect, see:Thompson v. Pacific Mills, 141 S.C. 303, 139 S.E. 619, 55 A.L.R. 1237; Powell v. Equitable Life Assur. Soc., 173 S.C. 50,174 S.E. 649; Johnson v. Inter-Ocean Cas. Co., 112 W. Va. 396,164 S.E. 411; Deese v. Travelers Ins. Co., 204 N.C. 214,167 S.E. 797; Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059; Anno., 105 A.L.R. 430; 29 Am. Jur., Insurance, section 1382. And compare: Ozanich v. MetropolitanLife Ins. Co., 119 Pa. Super. 52; Sgro v. Stuyvesant Ins.Co., 132 Pa. Super. 444.
So far as appears from the opinions in Equitable Life Assur.Soc. v. Snipes, 274 Ky. 340, 118 S.W.2d 706, Equitable LifeAssur. Soc. v. Green, 259 Ky. 773, 83 S.W.2d 478, andMissouri State Life Ins. Co. v. Hinkle, 18 Tenn. App. 228,74 S.W.2d 1082, relied upon by the Society, no question of omission of the insurer to give notice of cancellation was involved or considered; moreover, the authorities cited in those cases do not support a conclusion that cancellation would have been effective irrespective of such notice. In Davis v.Metropolitan Life Ins. Co., 161 Tenn. 655, 32 S.W.2d 1034,Lancaster v. Travelers Ins. Co., 54 Ga. App. 718, 189 S.E. 79, and Kloidt v. Metropolitan Life Ins. Co., 18 N.J. Misc 661, 16 A.2d 274, all cited supra, it affirmatively appears that the insured employee was, in each case, given timely notice of the intended cancellation; consequently, no lack of notice could have been involved in these cases and they are, therefore, likewise of no assistance here. And, as the opinion in the case of Missouri State Life Ins. Co. v. Sargeant,49 Ohio App. 545, 197 N.E. 397, expressly states that "no question is *Page 128 
made of the elimination of the 'Total and Permanent Disability' clause", it as clearly affords no support for the Society's contention, and if it did, would have to be regarded as overruled by the more recent case of Hinkler v. Equitable LifeAssur. Soc., 61 Ohio App. 140, 22 N.E.2d 451, also referred to supra. Other cases are cited by the Society, dealing with whether the employer is agent of the insurer or employee in matters pertaining to the procurement of individual coverage under the group contract, with whether the employer is agent of the insurer to waive conditions in the policy or to receive notice of claims, and with whether the employer is the agent of the insurance company to solicit the insurance within the meaning of statutes making the solicitor agent of the insurer, but they need not be referred to; suffice it to say we think they have no application whatever in a case such as is now presented.
Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy. In addition to the decisions referred to, see: Crawford, Group Insurance, section 41; Hanft, Group Life Insurance: Its Legal Aspects, 2 Law 
Contemp. Prob. 70; Insurance — Recent *Page 129 
Trends in Group Insurance, 12 N.C. L. Rev. 166; Group Insurance: Some Legal Problems, 26 Va. L. Rev. 487; Cancellation of Group Insurance Policy By Employer Without Consent of Employee, 49 Y. L. J. 585.
The Society's contention that the entry of judgment in its favor is sustainable on the alternative ground that appellant's evidence failed to establish that it had ever received "due proof" of total and permanent disability "before the expiration of one year from the date of its commencement", as required by the terms of the policy and individual certificate issued to the insured, is likewise untenable. Conceding that under such a provision presentation of preliminary proofs becomes a condition precedent to the right to disability benefits and that the period of one year is a reasonable and valid limitation (Bahas v. Equitable Life Assur. Soc., 331 Pa. 164), it is nevertheless well settled that as the provision is inserted exclusively for the benefit of the insurance company, to enable it seasonably to make inquiry into the circumstances of the loss, it may be easily waived by the company, and that such a waiver, being essentially a matter of intention, need not be based on a new consideration or amount to a technical estoppel, but may be implied from any acts or conduct on the part of the insurer inconsistent with an intention to insist upon literal compliance with the condition. See Freedman v.Ins. Co., 175 Pa. 350, 360; Simons v. Safety Mut. Fire Ins.Co., 277 Pa. 200, 203; Fedas v. Ins. Co. of State of Penna.,300 Pa. 555, 559-60; O'Brien v. Sovereign Camp, W. O. W.,122 Pa. Super. 39, 43; Vance on Insurance, (2d Ed.), pp. 455-58, 464-65, 483. Thus, where an insurer refuses to pay a loss because of some alleged defense wholly apart from the furnishing of preliminary notice and proofs of loss, it has been repeatedly held that it thereby waives the necessity of furnishing such notice and proofs, except on the trial, upon the ground that such conduct of the insurer is tantamount to a statement *Page 130 
that preliminary proofs of loss are not desired and upon the ground, as stated in Fedas v. Ins. Co. of State of Penna., supra, that "a policyholder need not do a vain thing, nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless." See: Hughes v. CentralAcc. Ins. Co., 222 Pa. 462; Janney v. Scranton Life Ins. Co.,315 Pa. 200; Umbras v. Prudential Ins. Co., 130 Pa. Super. 437.
While the denial that dispenses with notice and proofs occurs more frequently after the loss is sustained, where, as here, it is admitted the insurer formally declared the contract cancelled and at an end, long prior to the occurrence of the loss, and in the meantime has done no act recognizing its validity, no reason is perceived why such action should not have the same effect in absolving the insured from his obligation to furnish preliminary proofs that is given to a denial of liability after the loss has occurred. As is aptly stated in Equitable Life Assur. Soc. v. Winning, 58 Fed. 541, 548: "It cannot well be supposed or assumed that an insurance company desires preliminary notice and proofs of loss under a given policy, except on the assumption that it is a subsisting obligation, and that such notice and proofs will be of some service in enabling it to make a timely examination of the circumstances attending the loss"; hence, in either event, the only reasonable assumption is that preliminary proofs were not desired by the insurer and that performance of the condition by the insured would have been a vain and utterly useless act, and in the one instance as in the other, therefore, the repudiation of liability should be regarded as constituting a waiver. And so it has been held. In Girard Life Ins. Co. v. Mutual LifeIns. Co., 97 Pa. 15, a life policy had been wrongfully forfeited for non-payment of an annual premium, some time before the death of the assured. In an action to recover the amount of the policy the insurance company resisted payment on the ground, among others, that no notice or proofs of loss had been furnished, as *Page 131 
required by the policy. This Court held that under such circumstances whether notice or proofs of loss had been furnished was immaterial, stating as follows (pp. 24-25): "The proofs referred to were not essential. . . . The defendant company denied all liability under the policy. They had declared it forfeited months before the death of the assured. Their position was, that as to the assured there was no policy. It was precisely as if they had denied ever having issued one. How then could they call upon the representatives of the assured, to furnish proofs of death 'under the policy?' " See also: Equitable Life Assur. Soc. v. Winning, supra, 548-49; NewYork Life Ins. Co. v. Baker, 83 Fed. 647, 652; Supreme LodgeKnights of Honor v. Davis, 26 Colo. 252, 58 P. 595, 598;Mechanics' Traders' Ins. Co. v. Himmelstein, 24 Ohio App. 29,155 N.E. 806, 810; Orr v. Nat. Fire Ins. Co., 52 S.D. 513,219 N.W. 119; Annos., 22 A.L.R. 428, 108 A.L.R. 911; 29 Am.Jur., Insurance, section 1144. We conclude, therefore, that preliminary proofs were not required to be furnished by appellant's insured and, consequently, that an omission to show a literal compliance with the provision for such proofs, or any compliance whatever, would afford no basis for relieving the insurer from liability under the facts of this case.
At the same time the motion for judgment non obstante veredicto was filed, the Society also moved for a new trial, which motion the court below discharged pro forma, in view of its action on the motion for judgment, but did not consider on its merits. Under these circumstances, we will reinstate the rule for a new trial and direct that the record be remitted with instructions to the court below to consider the reasons urged in support of a new trial and to make such disposition of this rule as it believes justice requires: Altomari v. Kruger,325 Pa. 235; Baldwin v. Transitone Auto R. Corp., 314 Pa. 10.
Judgment reversed and rule for new trial reinstated.
* Allocatur refused, 143 Pa. Super. XXI. *Page 132