## Borden's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

The facts appear from the following adjudication of

HUNTER, J., auditing judge.—This trust arose under trust agreement of Edward P. Borden, dated April 11, 1908, whereby he agreed to execute and deliver to the Real Estate Trust Company of Philadelphia, trustee, a written obligation in the sum of $30,000, payable on demand with interest at the rate of five percent,

in trust, to pay the interest to Elizabeth M. Borden during her life, or so long as she should remain unmarried, and on her death or remarriage to pay the interest to Katharine Borden and E. P. Borden, 2d, grandchildren of the settlor, during their respective lives, and upon the death of either without issue to the survivor of said grandchildren, and on the death of the survivor to pay the principal to their issue by representation, and if no issue to settlor's son, E. Shirley Borden, and if he be not living it shall pass as the son's estate, etc.

Settlor was the father of E. Shirley Borden, who was then married to Elizabeth M. Borden, life tenant.

In the background of this trust agreement were divorce proceedings by Elizabeth M. Borden in the State of Colorado, in which a decree of divorce, a. v. m., was entered four days subsequent to the trust agreement.

This account is filed because of the death of Elizabeth M. Borden on July 12, 1946.

Katharine Borden, now Graves, and Edward P. Borden, 2d, named in the deed, are living and the trust continues for their lives respectively.

By decree entered November 4, 1946, Catherine A. Donahue, Esq., was appointed guardian ad litem for Edward P. Borden, 3rd, a minor remainderman, and trustee ad litem for unascertained interests.

The trust agreement is peculiar in that it did not provide for the transfer of property for investment, but required settlor to give an obligation in writing to pay $30,000, with interest, to be secured by a pledge of collateral of the value of at least $40,000. It was declared by the deed to be the duty and power of the trustee to demand additional or other securities from time to time for properly securing the principal and interest of the obligation. The obligation was not dissolved by the death of settlor because he bound himself, his heirs, administrators and assigns.

The deed further provided in item III that settlor should have power, after the death of Elizabeth M. Borden, primary life tenant, to withdraw all of the collateral and substitute for the said obligation and collateral, cash in the amount of $30,000.

At the death of settlor on December 14, 1916, the collateral in the hands of the trustee was certain shares of stock of the value of $63,000. Settlor's note was an obligation of his estate and stood in the way of its final settlement.

The trustee, who was also trustee under the will of settlor, and therefore acting in a dual capacity, anticipated the provision of the deed authorizing the substitution in cash for the note and collateral, which settlor had power to do, at the death of Mrs. Borden, and compromised the matter by accepting $40,000 in cash and releasing the note and the $63,000 of collateral.

The $40,000 sum was invested and reinvested by the trustee, and by reason of losses in investments, payments to life tenant out of principal as directed by the previous adjudication $2,509.98, and costs of administration, has been reduced to $24,151.02.

By adjudication filed May 24, 1944, confirming the first account of the trustee, the then auditing judge (who was also the present auditing judge), held that the trustee was negligent in entering into this agreement, because the cash accepted was grossly inadequate, and the releasing of settlor's note and the $63,000 collateral was a surrender and not a compromise, and was supine negligence.

The adjudication of 1944 made a distinction between the rights of life tenant and remaindermen. The exceptions of life tenant were dismissed because she had estopped herself by acquiescence. The finding was made, however, that life tenant was entitled to have her annual sum paid out of $10,000 of principal because the deed should be construed to give her a prefer-

ence in $10,000. As has been stated, the deed required that the collateral should be at least $40,000 during her life time, but at her death could be replaced by $30,000 in cash.

The request of the guardian and trustee ad litem for an immediate surcharge was refused by the adjudication of 1944 because losses in the investments made by the trustee had not been established, and when foreclosed real estate had been liquidated, it might be sufficient to make up the whole of the $30,000 sum. The adjudication of 1944 was made without prejudice to the rights of remaindermen at the death of Elizabeth M. Borden to renew their application for surcharge against the trustee.

The guardian and trustee ad litem has renewed the request for surcharge at the audit of this account.

The trustee contends that the settlement which was made with the executor of settlor was beneficial to this trust estate. I am not convinced. The trustee held $63,000 of collateral which it released for $40,000 in cash. The trustee also held the note of settlor and therefore, in addition to the collateral, had the right to enforce the personal liability of settlor, and this also it released. The position of the trust estate was most favorable, and common caution indicated that these rights be maintained and not surrendered.

As pointed out in the previous adjudication, it was agreed that the $40,000 cash to be received from settlor's estate, should be invested in Liberty bonds at four percent, which would produce $1,600 a year, of which $1,500 would be required for payment to life tenant, $75 for the fixed compensation of the trustee, leaving a scant margin of $25 per annum, and this without regard to other expenses of the trust, or loss or depreciation in reinvestment.

The trustee should have enforced the personal liability of the settlor at the settlement of his $300,000 estate, and I believe at least $50,000 in cash could

have been had for the asking. I cannot imagine the executor of settlor refusing to pay over $50,000 when he could get $63,000 in return; and if it had been left to the court I am sure that at least $50,000 would have been set aside to secure the annual sum of $1,500, a capitalization at three percent which would have left a safe margin for all purposes of the trust.

The trustee did not consult the life tenant or any beneficiary about this settlement, and apparently relied upon the understanding of E. Shirley Borden, son and executor of settlor, and former husband of the life tenant, that he would make good any shortage in the income.

The trustee contends further that it acted upon advice of counsel. Neither counsel nor the trustee may release or give away the rights of the parties. These rights were overwhelmingly against settlor and his estate, and I can see no matters of doubt which required a compromise. The only question was the amount which would safely provide for the payments mentioned in the deed. What was done was for the convenience of settlor's estate and with little regard for the welfare of the trust.

I confirm the findings of fact and conclusions of law of the previous adjudication of May 24, 1944.

I fix the liability of the trustee to remaindermen at $30,000, the amount specified in the deed which settlor had the right to pay at the death of Mrs. Borden for the return of his note and collateral. I surcharge the trustee the difference between $30,000 and the present value of the estate.

I am not inclined to disturb the charges of $250 fee to counsel for the accountant or clerk's cost of $75. The fee is moderate, and with the costs, was necessary in these proceedings.

In accordance with the findings of this adjudication the sum of $30,000, less counsel fee to Newbourg, Grubb & Junkin, $250; clerk's costs, $75, and com-

pensation to Catherine A. Donahue, Esq., guardian and trustee ad litem, $250, and composed of the securities included in the account and the amount of the surcharge hereby imposed, is awarded to be retained by the Real Estate Trust Company of Philadelphia, trustee.

The account shows a balance of income of $28.50 of which the amount of her annual sum accrued to July 12, 1946, is awarded to Edward P. Borden, 2d, executor of the will of Elizabeth M. Borden, deceased; and the balance then appearing, together with all additional income, is awarded in equal shares to Katharine Borden Graves and Edward P. Borden, 2d.

Leave is granted to make transfers and assignments.

A report of the official examiner, as to his examination of the assets awarded in trust, will be submitted.

And now, March 31, 1947, the account is confirmed.

*Joseph H. Grubb, Jr.,* for *Foulkrod, Porter & Wadlinger,* and *Newbourg, Grubb & Junkin,* for accountant.

*Catherine A. Donahue,* guardian and trustee ad litem, for exceptants.

*Arthur M. Soll,* for Commonwealth.

LADNER, J., May 29, 1947.—Edward P. Borden, settlor, by a deed of trust, dated April 11, 1908, agreed to execute and deliver to the Real Estate Trust Company of Philadelphia, trustee, a "written obligation" in the sum of $30,000, payable on demand, with interest at the rate of five percent, in trust, to pay the interest thereon to Elizabeth M. Borden, during her life, or so long as she should remain unmarried, and on her death or remarriage, pay the interest to Katherine Borden and E. T. Borden, 2d, grandchildren of settlor, during their respective lives, and upon the death of either, without issue, to the survivor of the

said grandchildren, and upon the death of the survivor, to pay the principal to their issue by representation, and if no issue, to settlor's son, E. Shirley Borden, or if he be not living, then to pass as part of the son's estate. The payment of both the principal *and the interest* to be secured as hereinafter recited.

Settlor was the father of E. Shirley Borden, who was then married to Elizabeth M. Borden, life tenant. Four days after the trust agreement was made, divorce proceedings by Elizabeth M. Borden in the State of Colorado were concluded and a decree of divorce a. v. m. was entered, so it is fair to assume the inducing purpose of the trust agreement was to settle the question of support of settlor's daughter-in-law and grandchildren.

By the trust agreement, no transfer of property for investment was provided for but it provided that the obligation of settlor in writing to pay $30,000, and the interest, was to be secured by a pledge of securities of a market value of at least $40,000. The trust instrument declared it to be the duty of the trustee to demand additional or other securities from time to time for properly securing the principal *and the interest* of the obligation. Settlor bound himself, his heirs, administrators and assigns, to the performance of the provisions of the agreement.

By paragraph III it was provided that settlor should have power after the death of Elizabeth M. Borden, primary life tenant, to withdraw all the collateral and substitute for said obligation and collateral, cash in the amount of $30,000. No right was given to settlor to sooner pay off or redeem his obligation. Paragraph II of the trust agreement provided that the trustee was to receive as full compensation the sum of $75 per annum, which was to be paid by settlor in addition to the interest, and that in the event of any other trustee being substituted for the trustee named, settlor agreed to pay the full charges and com-

missions of said trustee so that the income of $1,500 per annum arising from the trust should not be diminished. The first life tenant, Elizabeth M. Borden, died July 12, 1946, and her death is the reason for the present accounting.

Settlor died December 14, 1916, and at that time the collateral in the hands of the trustee was stock of a market value of $63,000.

Settlor's son, E. Shirley Borden, was his sole executor, and the Real Estate Trust Company (trustee here) was named and acts as a cotrustee under decedent's will.

In order to enable settlor's estate to be closed up, the trustee-accountant surrendered to the executor settlor's written obligation of $30,000, the $63,000 in collateral security and accepted the sum of $40,000 in cash, which sum it invested and reinvested but by reason of sundry losses in investments, payments to life tenant out of principal, as directed by a previous adjudication, $2,509.98, and costs of administration, the principal has been reduced to $24,-151.02. Miss Donahue, guardian and trustee ad litem for the minor and unascertained interests, objected to the account and asked for a surcharge on the ground that the trustee committed a breach of trust by surrendering the obligation of $30,000 and the $63,000 of collateral held by it, to secure payment of the interest payments and principal and releasing settlor's estate from its liability to carry out the terms of his agreement. The learned auditing judge ruled that the trustee was supinely negligent and its action showed a lack of ordinary prudence in making such a settlement on its own responsibility.

The record shows that the same claim was made by the guardian and trustee ad litem at the audit of a previous accounting held in 1944, before the same auditing judge, and her application was joined in by the now deceased life tenant. By his adjudication of

May 24, 1944, the present auditing judge carefully reviewed the facts and came to the same conclusion as he did in the present adjudication. He, however, withheld the surcharge for the reasons that the life tenant was estopped by her long continued acquiescence after knowledge of the settlement, and so far as the remainder interests were concerned, a loss could not be established because foreclosed real estate held by the trustee had not yet been liquidated. It was ruled, however, that the deceased life tenant, under the terms of the trust deed, was entitled to $1,500 per annum and not merely the income earned, and she was awarded the deficiency out of principal.

By the adjudication, now excepted to, the auditing judge confirmed his findings and conclusions made in his prior adjudication of May 24, 1944, and surcharged the trustee with the difference between the amount of principal on hand and the $30,000 which it should have had if settlor's estate had not been released.

We think that the action of the auditing judge was correct. We feel it unnecessary to repeat what the auditing judge has so well said in his two adjudications and will confine ourselves to considering the arguments advanced by the learned counsel in support of the exceptions.

At the argument and in his brief, the learned counsel for the trustee urges that the compromise by which the trustee received $40,000 in cash was, after all, beneficial to the estate for the executor might have tendered $30,000, the face value of the note, which was payable on demand and required the return of the collateral. But there is nothing in the record to show that either the settlor or his executor had any such right. No note, so providing, was produced nor offered in evidence. All that appears of record is a stipulation that contemporaneously with the trust agreement there was "executed and delivered to such

trustee his (settlor's) *written obligation or promissory note* in the sum of $30,000, payable on demand with interest from July 1, 1908, at the rate of five percent per annum, together with collateral security therefor". It was explained at the argument that the original obligation or note was lost and no copy could be found. From this meagre description of the alleged note, if there was a note (a note may be an obligation but not every obligation is a note) we would not have the right to assume it contained a provision contradicting the express provisions of the deed of trust that only after the death of Elizabeth Borden could the settlor withdraw all the securities and substitute for said "obligation and securities" $30,000 in cash. Settlor lived eight years after he made the deed. If the obligation or note contained any such provision he probably would have asserted it long before his death rather than have left $63,000 worth of securities remain with the trustee. These securities the trustees were entitled to hold not only to secure the payment of the principal but also to secure *the payment of the interest until death or remarriage of Elizabeth Borden.*

The case of Thomas v. Waters, 343 Pa. 125, cited for the proposition that demand note can be paid off at any time and the payee required to return the collateral, is not in point, for in that case the court was construing a collateral note in the customary form— a note that stood alone and not executed in conformity with a contemporaneous deed fixing the rights and duties of the parties.

Nor can we agree that the settlement was a beneficial one. To so assert is also a misconception of the true effect of the trust deed. It was not in the usual form, the form where a trustee is given property to invest and is obligated only to pay the income over to the beneficiary. The duty imposed on the trustee here was to collect $1,500 a year in quarterly install-

ments from settlor, and to pay the same over to Elizabeth Borden until her death or remarriage. The obligation and the securities were delivered to the trustee merely to furnish a convenient mode of enforcing settlor's undertaking. When, therefore, the trustee undertook to surrender $63,000 worth of collateral securities, and released decedent's estate from all liability to continue the $1,500 a year payments, all for the sum of $40,000 in cash, it by its own action limited itself to the income which that sum would produce. Thereafter it took upon itself the burden and the responsibility not only of producing a sufficient income to pay Elizabeth Borden $1,500 a year, together with commissions, expenses and costs of administration, but also of having on hand $30,000 when Elizabeth Borden died or remarried. This change of the terms of the trust instrument is essentially a breach of trust and it matters not that the trustee acted in good faith.

When a person obligates himself to continue periodical payments to a time which may extend beyond his death, his agreement forms the basis of a claim which when presented at the audit of his executor's account must be honored and a sufficient sum set aside to meet the continuing duty of future payments: Speare's Estate, 349 Pa. 76. The presentation of such a claim was the trustee's duty and this was the duty it neglected, a duty that a person of ordinary prudence would not have omitted. Settlor left a $300,000 estate, so had this been done, following the well-settled practice of this court, there would have been set aside a sum sufficient to make certain, beyond all contingencies, the payments required to be made. Such a sum, as the auditing judge says, would probably have been at least $50,000, the capitalization of the $1,500 annual payment on a three percent basis, which long experience has demonstrated to be usually sufficient. See Henson's Estate, 36 D. & C. 109, id. 12 D. & C. 128.

In any event, if the amount thus set aside by the court proved insufficient, nevertheless, its adjudication of the fact *then*, would have protected the trustee *now*, against the predicament it finds itself in.

But, having undertaken to decide this question for itself, despite the means available to it to have the court adjudicate it, it cannot now complain that it must bear the responsibility of doing what it was not required to do.

Next, counsel urges that the trustee had a right to compromise a doubtful claim. However, this was not a doubtful claim. We agree with the auditing judge in his conclusion that it could not be said there was any doubt of the *right* to enforce the obligation of settlor against his estate according to the terms of the trust deed. The only question was how much should be provided, not *if* it should be provided.

Finally, it is contended that as the trustee acted pursuant to advice of counsel it cannot be surcharged. Advice of counsel, however eminent, will not serve to excuse a trustee for a breach of trust. In section 201 of A. L. I. Restatement of Trusts, comment (*a*), it is said:

"A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, whether a statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he acts in good faith, *nor is he protected merely because he relies upon the advice of counsel.* . . . If he is in doubt as to the interpretation of the instrument, he can protect himself by obtaining instructions from the court. The extent

of his duties and powers is determined by the trust instrument and the rules of law which are applicable, and not by his own interpretation of the instrument or his own belief as to the rules of law."

We are all agreed that the exceptions must be dismissed. And now, to wit, May 29, 1947, the exceptions are dismissed and the adjudication is confirmed absolutely.