## Hammons v. Carnegie-Illinois Steel Corp.

*Samuel J. Goldstein,* for complainant.

*P. K. Motheral* and *Reed, Smith, Shaw & McClay,* for respondent.

PATTERSON, J., June 20, 1947.—Plaintiff files this bill as guardian ad litem for a weak-minded person. She seeks to compel the reinstatement of a certificate of insurance issued by defendant to plaintiff's ward under a group insurance policy covering defendant's employes. Defendant in its answer generally admits the factual averments but sets up new matter alleging that the certificate of insurance issued to plaintiff's ward was cancelled as of December 31, 1944, with the effective date of discontinuance of insurance, January 31, 1945, and that the said cancellation was in accordance with the terms of the policy, as amended on January 26, 1944. The amount of the certificate issued to the insured was at the date of its issuance, January 1, 1935, for the sum of $1,000. This was subsequently on April 19, 1941, increased to $2,000. Two questions emerge from the pleadings and evidence, both questions of law, as follows: (a) Was the insurance company a necessary party to the bill?; (b) was the discontinuance of insurance authorized by the language of the group insurance policy?.

*Findings of fact*

1. Complainant is a resident of the City of Clairton, County of Allegheny and State of Pennsylvania.

2. Defendant, Carnegie-Illinois Steel Corporation, is a business corporation organized for profit, and doing business in the State of Pennsylvania in accordance with the acts of assembly relating to business corporations, maintaining an office and principal place of business in the Carnegie Building, Pittsburgh, Allegheny County, Pa.

3. On or about July 1, 1935, the above named Lee Hammons was an employe at the Clairton Works of the Carnegie Steel Company, now the Carnegie-Illinois Steel Corporation, a subsidiary of the United States Steel Corporation, and hereinafter called the employer.

4. On or about July 1, 1935, the Equitable Life Assurance Society of the United States, hereinafter called

the society, issued a group life insurance policy numbered 4600-2 to the employer, insuring the lives of all employes of the employer who made application for the insurance coverage thereunder.

5. On or about July 1, 1935, Lee Hammons made application for group life insurance coverage under policy numbered 4600-2 issued by the society to the employer and in accordance with said application the said Lee Hammons became insured thereunder, and there was issued to him individual certificate numbered 4600-2-C-1895, the same indicating and being evidence of life insurance coverage under the above numbered policy on the employe in the sum of $1,000, the beneficiary named thereon being Pauline Hammons, complainant in this action.

6. On or about April 19, 1941, the individual life insurance coverage on the said Lee Hammons was increased to $2,000.

7. On February 18, 1943, Lee Hammons, the insured, was committed to Woodville State Hospital where he has been since and is now confined and is permanently and totally disabled.

8. After his incapacitation the employer continued to accept premium payments and to carry the insurance in force up to January 31, 1945.

9. On December 26, 1944, the premium of $1.10 for the month of January 1945 was paid and a receipt therefor issued, and on the same day the employer sent the insured at his home in Clairton, Pa., a letter informing him that in view of his continued absence from work since February 18, 1943, his employment would be terminated as of December 31, 1944, and his insurance coverage terminated on January 31, 1945, and accompanied the letter with a check in the sum of $1.10 refunding the insurance premium for the month of January 1945.

10. On or about March 7, 1945, complainant, through counsel, forwarded a check to the society in

the sum of $3.30 covering the monthly contribution of the insured employe for the months of January, February and March 1945, which check was returned to counsel on March 12, 1945, without any adequate explanation.

11. On or about May 2, 1945, complainant, through counsel, forwarded to the employer a check in the sum of $5.50 covering the monthly contributions of the above named from January 1, 1945, until June 1, 1945, and on May 16, 1945, the same was returned to counsel for complainant with the explanation that there was no insurance on the life of the employe existing at that time.

12. The original policy of group insurance provided for the cessation of insurance upon the life of any employe upon discontinuance of his contributions towards the payment of premiums or in the case of the termination of his employment in the specified classes of employes, with the usual 30-day period for the purpose of conversion to an individual policy.

13. On January 26, 1944, the said group policy as to cessation of work and termination of insurance was amended to provide cessation of active work by an employe should be deemed to constitute cessation of his employment, except that an employe absent from work because of disability due to injury or sickness, subject to the continuance of premium payments on account of such employe's insurance, be regarded as still in the employment of the employer during the period of such disability, until the effective date of the discontinuance of such employe's insurance as entered on the employer's record.

14. Defendant entered on its records as the effective date of the discontinuance of the employment of Lee Hammons the date December 31, 1944, and as the effective date of the discontinuance of his insurance, January 31, 1945.

15. The defendant has refused to accept any payment of premiums since the premium of December 1944, and has refused to reinstate the certificate of insurance.

## Discussion

We are not disposed to view with approval defendant's position that the insurer is a necessary party in this particular proceeding. Under the group policy the insurance coverage is a matter wholly within the control of the employer so far as the employe is concerned. The employer defines eligibility, collects premiums, decides the questions of cancellation or cessation of the insurance. Nor does it consult the insurer as to any of its functions. In the instant case the insurer so far as the record before us reveals was wholly without participation in or knowledge of the employer's actions. Of course, it follows that if the employer goes beyond the terms of the policy in the exercise of its functions, as here· complainant claims it did, it becomes liable to the employe.

Was the employer then faithful in its obligation to the employe beneficiary? The whole question arises from the act of the employer in agreeing with the insurer to an amendment in its group policy on January 26, 1944, and availing itself of this amendment one year later. The facts are not in dispute. It is conceded that the policy (which is the contract between insured and employer) was amended. The fact is pleaded by the defendant in its answer and is accepted as an admission by the defendant in the record, to wit:

"Defendant avers that on January 26, 1944, said group policy numbered 4600-2 was amended to provide that cessation of active work by an employe should be deemed to constitute cessation of his employment, except that an employe absent from work because of disability due to injury or sickness would, subject to the continuance of premium payments on account of such employe's insurance, be regarded as still in the

employment of the employer during the period of such disability until the effective date of the discontinuance of such employe's insurance as entered on the employer's records.

"Defendant avers that it entered on its records as the effective date of the discontinuance of the employment of Lee Hammons the date of December 31, 1944, and as the effective date of the discontinuance of his insurance January 31, 1945."

It appears at once that this amendment was adopted 9½ years after the certificate for $1,000 was issued to the employe (May 1935), and almost three years after the amount was increased to $2,000 (April 19, 1941). It likewise appears that it is about one year after the employe became permanently and totally incapacitated.

Defendant does not suggest nor contend that the employe had any knowledge of this amendment at the time it was inserted in the group insurance policy. It was only when the premium payment was refused on December 26, 1944, that notice was given of the condition attached to employe's insurance and of the cessation of coverage 31 days later to meet the conversion period that was always a part of the policy.

Our appellate reports teem with records of litigation on group insurance policies and both counsel in their briefs have referred to many of these cases. Mr. Justice Patterson has written an extremely well considered and highly expositive opinion on the subject in Poch v. Equitable Life Assurance Society, 343 Pa. 119, considering the subject in a great variety of its aspects.

But the question here presented confronts us with a new problem which is encountered in none of the cases cited. That question is: Has an employer or insurer, or both, the right to amend the terms of insurance providing for termination thereof after the employe beneficiary has become permanently and totally incapacitated or disabled, and to avail itself of the amend-

ments a year later, accepting the insured's premiums in the interim?

When an employe has become disabled, as plaintiff's ward did in this case, he has assumed a status. It must be conceded, so far as our record is concerned, that he will never be able to work again. It is suggested by defendant, but not pressed, that it had no notice of his disability. That his condition was known is not denied. Moreover, notice would have added nothing to defendant's awareness of the situation nor served any useful purpose. He was required to have a guardian ad litem in this proceeding. Under older forms of insurance this status preserved his rights under the policy as they existed at the time of disability. But now there appears that, as a covenant in the contract, the employer may carry him as an insured employe until such time as it may see fit to note an arbitrary date as the effective date of the discontinuance of such employe's insurance in its, the employer's, record. In other words, the cessation of insurance after permanent and total disability is a matter of whim or arbitrary decision to declare the insurance cancelled. We deem this to be an unauthorized act by a contracting party by which it seeks to evade its contractual liability in a manner that opens the way to manifestly unfair practices. But aside from this, we are of opinion that the amendment to the contract, without notice to the beneficiary, cannot impair his rights. Since the contractual change was made without notice, then a notice in pursuance thereof given a year later would be equally ineffective.

It may well be that when the amendment was agreed upon by the insurer and the employer that the employe beneficiary, or those acting in his behalf, might have elected to take advantage of conversion instead of subjecting the insured to an untimely cancellation. That the employer gave notice of cancellation under the amendment cannot validate the unwarranted action under which the power to cancel was created.

We have endeavored to turn the light of authority on the question presented and have examined and read numerous cases of this and other jurisdictions cited and referred to in the exhaustive briefs of counsel. However, we still find the question here involved standing alone. We have come to the conclusion that anent the instant case we may well follow what Mr. Justice Patterson in the Poch case stated, at page 128:

"Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy."

As to the question of nonpayment of premiums which is suggested but not exhaustively discussed in the briefs, we deem it of no effect in the light of the admitted fact that premiums offered were repeatedly returned. The law requires no one to do a futile thing. We are, therefore, of the opinion that the insurance should be reinstated.

### Conclusions of law

1. Equity has jurisdiction.

2. The Equitable Life Assurance Society is not a necessary party.

3. The insurance certificate marked Exhibit B, attached to plaintiff's claim, should be reinstated, the cancellation thereof declared null and void, and the insurance coverage for Lee Hammons, the employer's beneficiary, provided for therein, be continued.

4. The costs should be paid by defendant.